A09A2210. NORTHEAST GEORGIA MEDICAL CENTER, INC.
v. WINDER HMA, INC.
A09A2211. GEORGIA DEPARTMENT OF COMMUNITY
HEALTH v. WINDER HMA, INC.

(693 SE2d 110)

ADAMS, Judge.

In two separate appeals, Northeast Georgia Medical Center ("NGMC") and the Georgia Department of Community Health ("DCH") challenge the decision of the Superior Court of Barrow County which reversed a final decision of the State Health Planning Review Board awarding a certificate of need ("CON") to NGMC for a 100-bed hospital in southern Hall County. The Review Board had upheld and adopted a hearing officer's findings of fact and conclusions of law entered after a formal hearing. The superior court ruled in favor of Winder HMA, Inc., d/b/a Barrow Regional Medical Center ("Barrow Regional"), which had objected to issuance of the CON. We granted both applications for discretionary appeal and consolidated the cases for review. The primary issue on appeal is whether the superior court had a proper basis for reversing the agency's final

---

decision.

Most of the facts are not in dispute and can be found in the hearing officer's decision. NGMC operates two facilities in Gainesville, Hall County — the large main campus and the separate 96-bed Lanier Park facility. Both hospitals operate pursuant to a single Department of Human Resources ("DHR") hospital license, and combined the two provide 557, CON-approved, acute care hospital beds. Barrow Regional is a 56-bed acute care hospital located in Winder, Barrow County, approximately 22 miles from NGMC's Main Campus.

On November 15, 2006, NGMC filed an application with DCH thereby requesting a CON for a new 100-bed hospital to be located in southern Hall County ("South Hall Hospital"), approximately 11 miles from Barrow Regional. In its application, NGMC proposed "to construct a hospital facility to replace its Lanier Park campus acute care facility through the construction of a 100-bed hospital in South Hall County. . . . This project will not add any new services or change NGMC's approved bed capacity of 557 beds." NGMC applied under rules governing a "replacement or expanded hospital" as opposed to a "new hospital" under the DCH regulation known as the Hospital Bed Rule. See Ga. Comp. R. & Regs. r. 111-2-2-.20 (3) (b) (1) & (3).[1] Importantly, the categories "new" and "replacement" require different calculations to determine the need for a facility. Id. Following requested supplementation, DCH deemed the application complete on December 29, 2006.

On February 23, 2007, Barrow Regional submitted opposition to the proposal in which it argued that "NGMC [was] attempting to disguise its proposal to construct a new, stand-alone hospital as a 'hospital replacement and relocation' project," and that NGMC could not replace Lanier Park because it was included on the same license as NGMC's main campus. Barrow Regional also argued there was no need for a new hospital, that NGMC had not met the "exception to need" criteria under the applicable rules, and that the project did not meet the criteria for a "replacement hospital."

On February 26, 2007, DCH held the required "60-day meeting" in order to "discuss issues that could potentially result in the denial of [the] application." At the meeting, DCH advised NGMC (1) that it did not consider the South Hall Hospital to be a "replacement" under the Hospital Bed Rule even if NGMC were to close Lanier Park, but (2) that DCH projected a net need for 127 additional acute care hospital beds in the "Target Service Area" (the area within ten

---

[1] Although they have since been amended, the DCH rules in effect at the time are found in the record, and all citations herein are to that version of the rules.

miles of the proposed facility), which included consideration of need in several counties including Hall, Gwinnett and Barrow, even if NGMC were to keep Lanier Park open. Accordingly, DCH suggested that NGMC amend its application to request approval of a new hospital rather than a replacement hospital.

On April 12, 2007, NGMC submitted an amended application to conform with the "new hospital" review standard, and supplemented the amendment on April 18. The amendment did not materially change any aspect of the proposed South Hall Hospital, and it included an analysis showing that the project satisfied the Hospital Bed Rule's standards for new hospitals. The amendment did indicate, however, that NGMC no longer planned to close Lanier Park. NGMC submitted a county-level adverse impact analysis to show the project would not adversely impact existing providers in the planning area. On April 24, Barrow Regional filed an opposition to the amended application.

On April 27, DCH approved the amended application and granted the CON. The department's decision is entitled "Evaluation for Certificate of Need." The evaluation sets forth the review findings for each of the applicable rules mandated for the process, including the rule for determining the need for a new hospital. Although DCH determined that NGMC had not met the "exception to need" criteria under the applicable rules, it determined that "there is a deficit of 127 beds in the service area" and that "the proposed project will not adversely impact any existing facility." DCH performed the adverse impact analysis with two sets of assumptions. The first calculation "does not take into account any population/patient base growth. . . ." That analysis showed the proposed market share for Barrow Regional would decline by four percent. Under DCH rules, a four percent impact on market share is not considered adverse for CON decisions regarding certain types of special hospitals such as "safety net" or teaching hospitals, which are specially protected because they offer services that other facilities may not. Therefore, a four percent impact on other types of facilities is not considered as adverse. The second analysis included projected growth, and it resulted in a finding of no adverse impact on Barrow Regional. Based on this information, DCH concluded that Barrow Regional would not be adversely affected.

Barrow Regional appealed the administrative decision. On September 18-20, 2007, a hearing officer conducted a full evidentiary hearing, in which Barrow Regional and NGMC each presented five witnesses, including one expert each, and DCH tendered its executive director of health planning from the application review period. Barrow Regional's primary arguments were that (1) DCH committed a procedural error by accepting NGMC's amendment rather than

requiring NGMC to start over with a new application, (2) that DCH erred by including Gwinnett County in its analysis, and (3) that DCH erred by concluding that the project would not adversely impact Barrow Regional.

On December 20, the hearing officer issued a decision rejecting Barrow Regional's arguments and affirming the CON. He found, among other things, that DCH correctly determined that NGMC's amended application did not constitute a "total change" to the scope of the project under its rules and therefore did not require a new application; that Barrow Regional was not prejudiced by DCH accepting the amended application; that DCH correctly determined the need for the South Hall Hospital; and that DCH correctly determined the project satisfied the applicable adverse impact standards and the Hospital Bed Rule. On January 18, 2008, Barrow Regional appealed to the full Health Planning Review Board. Following oral argument, the board rejected Barrow Regional's arguments and adopted the hearing officer's findings of fact and conclusions of law. It expressly found that there was "substantial evidence in the record to support" the hearing officer's decision. By operation of law, the final decision of the review board became the department's decision. OCGA § 31-6-44 (j) (1994).[2]

Barrow Regional then appealed to the Superior Court of Barrow County. Following briefing and oral argument, that court reversed DCH's final decision and remanded the matter to DCH

> for consideration as a new application with adequate statutory time to be given to all parties, and to the Department, to complete a thorough analysis of all the relevant facts, circumstances, and data, in view of the decision by NGMC to retain ninety-six (96) beds in its Lanier Park facility in addition to the new beds being considered in South Hall County.

1. This Court has jurisdiction of this appeal even though the superior court remanded the case for further consideration. The case is subject to the Administrative Procedure Act (APA). OCGA § 31-6-44 (m) (1994). Under an APA review, this Court can only review final orders. OCGA § 50-13-20; *Ga. Public Svc. Comm. v. Southern Bell*, 254 Ga. 244, 247 (327 SE2d 726) (1985). Thus, in general, "if the superior court orders a remand on any issue, such ruling is not

---

[2] The current CON Act was amended in 2008 and it applies only to applications filed on or after July 1, 2008. Ga. L. 2008, p. 12, § 3-1. Consequently, our citations will be to the prior version of the statute.

appealable." (Citation omitted.) *Southern Bell*, 254 Ga. at 247; *State Health Planning Review Bd. v. Piedmont Hosp.*, 173 Ga. App. 450 (326 SE2d 814) (1985). Nevertheless, not all remand orders are interlocutory. See *Ga. Public Svc. Comm. v. Campaign for a Prosperous Ga.*, 229 Ga. App. 28, 29 (1) (492 SE2d 916) (1997). In that case, the superior court found that the Public Service Commission illegally treated the administrative case before it as an accounting matter instead of as a rate case and remanded for a full evidentiary hearing as a rate case, requiring compliance with a different legal standard. Consequently, the "Accounting Order" was reversed on its merits and, under the superior court's holding, an accounting order could not reissue. The remand order, therefore, "did more than merely remand the case to the PSC for the taking of additional evidence that would facilitate the superior court's final resolution of the case," and thus the remand order was a final judgment as to the accounting matter. Id. The case of *Coastal Marshlands Protection Committee v. Center for a Sustainable Coast*, 286 Ga. App. 518, 520 (1) (649 SE2d 619) (2007), is based on similar reasoning.

Here, the superior court reversed and remanded the agency decision to grant NGMC a certificate of need and directed DCH to reconsider NGMC's application as a new application rather than as an amendment to a previously filed application. The agency rules provide that such a change would mean that "the original application will be considered to be withdrawn." Ga. Comp. R. & Regs. r. 111-2-2-.07 (1) (h). Thus, under the superior court's decision, the proceedings regarding NGMC's original application have terminated and are final. Following the above precedent, we conclude this Court has jurisdiction of these appeals.

2. "[J]udicial review of an administrative decision is a two-step process." *Handel v. Powell*, 284 Ga. 550, 552 (670 SE2d 62) (2008). First, the reviewing court determines if there is sufficient evidence under the appropriate standard to support the agency's findings of fact; and second, the court "examine[s] the soundness of the conclusions of law drawn from the findings of fact supported by [sufficient] evidence." *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 161 (3) (664 SE2d 223) (2008).[3]

---

[3] In *Pruitt Corp.*, the Supreme Court addressed judicial review of an administrative agency decision under the standards applicable to contested cases reviewable under the APA. *Pruitt Corp.*, 284 Ga. at 159 (1). See also OCGA § 50-13-19. Under that Act, a reviewing court may reverse or modify the agency decision where, among other things, the agency decision is "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record." OCGA § 50-13-19 (h) (5). This wording has been interpreted to be the same as the well-known "any evidence" test used in other settings. Id. at 160 (3). See also *Emory Univ. v. Levitas*, 260 Ga. 894, 898 (1) (401 SE2d 691) (1991), limited on other grounds in *Pruitt Corp.* But under the CON program governed by OCGA § 31-6-40 et seq., a "substantial evidence"

Under the CON program, the appropriate standard for reviewing the sufficiency of the evidence is whether there was "substantial evidence" supporting the agency decision, and "such evidentiary standard shall be in excess of the 'any evidence' standard contained in other statutory provisions." OCGA § 31-6-44 (m) (5) (1994). See, e.g., *Ga. Dept. of Community Health v. Satilla Health Svcs.,* 266 Ga. App. 880, 885 (1) (598 SE2d 514) (2004). Under the CON program, the agency's conclusions of law are not sound

> if substantial rights of the appellant have been prejudiced because the procedures followed by the planning agency, the hearing officer, or the review board or the administrative findings, inferences, and conclusions contained in the final decision are:
>
> (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedures; (4) Affected by other error of law; . . . or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 31-6-44 (m) (1994).

Finally, "[w]hen this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Footnote omitted.) *City of LaGrange v. Ga. Public Svc. Comm.,* 296 Ga. App. 615, 616 (675 SE2d 525) (2009).

(a) Barrow Regional asserts that the superior court did not find that DCH's final order was not supported by substantial evidence. Rather, it asserts the entire order is based on the conclusion that the DCH decision was "arbitrary and unreasonable" in that the procedure followed by the agency did not allow either DCH or Barrow Regional "an opportunity to properly review the significance of keeping NGMC's Lanier Park facility open."

Nevertheless, some aspects of Barrow Regional's arguments require this Court to determine whether substantial evidence supports DCH's decision to grant a CON. But in doing so, we neither reweigh the evidence, perform a de novo review, nor substitute our

---

standard is applied, and the statute expressly states that the "substantial evidence" standard "shall be in excess of the 'any evidence' standard contained in other statutory provisions." OCGA § 31-6-44 (m) (5) (1994). See also OCGA § 31-6-44.1 (a) (5) (2008) (current law is unchanged). Therefore, we follow *Pruitt Corp.* generally but apply the appropriate standard applicable to certificate of need cases.

56

own judgment for that of the hearing officer as to the weight of the evidence. See *Dept. of Community Health v. Gwinnett Hosp. System*, 262 Ga. App. 879, 882 (586 SE2d 762) (2003). Cf. *Pruitt Corp.*, 284 Ga. at 160 (3).

"Substantial evidence" is defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions. . . ." OCGA § 31-6-44 (m) (5) (1994). Here, the grant of the CON was based on detailed information about the nature and scope of the project; an assessment of existing facilities in proximity to the proposed hospital; population growth projections from the Office of Planning and Budget; an adverse impact analysis that included Barrow Regional and concluded that it would not be prejudiced by the grant of a CON given projected population growth and given that Lanier Park would remain open; an assessment of the degree to which the proposed hospital would be financially accessible to the residents of the service area; an analysis of need determined through application of a demand-based forecasting model, which showed the need for 127 new beds in the Target Service Area; arguments and opposition from Barrow Regional about the project, including presentation of five witnesses and expert opinion; testimony from DCH about all of these topics and about the application process, the amendment, and applicable statutes and rules; testimony and expert opinion from NGMC in support of their application; and agreement by Barrow Regional with the result of the no-growth impact analysis, the growth projections for the area, and the idea that growth would reduce impact over the no-growth projections. We conclude that substantial evidence supported DCH's decision.

Barrow Regional contends the evidence showed flaws in both NGMC's and DCH's impact analysis. But the hearing officer heard all of the evidence and arguments regarding this point, and it is not our function to reweigh the evidence.

(b) We next "examine the soundness of the conclusions of law that are based upon the findings of fact." *Pruitt Corp.*, 284 Ga. at 160 (3). In so doing, the reviewing court must give deference to the agency's interpretation of statutes it is charged with enforcing or administering and to the agency's own rules and regulations. Id. at 159. We do so because "agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches." (Citations and punctuation omitted.) *Surgery Center v. Hughston Surgical Institute*, 293 Ga. App. 879 (668 SE2d 326) (2008). Nevertheless, with regard to statutes, "the agency's interpretation is not binding on the courts. . . . The judicial branch 'makes an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain lan-

guage of the statute and comports with the legislative intent.' " (Citations and punctuation omitted.) *Handel*, 284 Ga. at 553. But "in construing administrative rules, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the rule." (Citation and punctuation omitted.) *The Atlanta Journal &c. v. Babush*, 257 Ga. 790, 792 (2) (364 SE2d 560) (1988).

Barrow Regional argued below that its substantial rights were affected because NGMC should have had to file a new application, and if it had, there would have been a delay of three or four months in the review process, which would have allowed for a more thorough and accurate review of the adverse impact of the proposed new hospital.[4] Tracking the words of the relevant statute, the superior court essentially concluded that the DCH decision to grant the CON prejudiced Barrow Regional's "substantial rights" "because the procedures followed by the planning agency, the hearing officer, or the review board or the administrative findings, inferences, and conclusions contained in the final decision" were "(3) Made upon unlawful procedures; . . . or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 31-6-44 (m) (1994).[5]

The crux of the superior court's decision is that DCH acted arbitrarily or upon unlawful procedures by allowing NGMC to amend its original CON application rather than requiring it to start over with a new application in early 2007. The superior court concluded that DCH's action violated the legislative policy underlying the CON program in that it did not allow either DCH or Barrow Regional sufficient time "to properly review the significance of keeping NGMC's Lanier Park facility open" so that the expansion of healthcare facilities could be limited to only those which are truly necessary. The superior court concluded that, as a result, DCH could not have given "complete and due attention" to the addition of 100 beds and it thereby "abdicat[ed] [its] responsibility to limit health care facilities to only those which are cost effective and not unnecessarily duplicative." It reasoned that the CON process "establishes

---

[4] Barrow Regional also argued that a new application would have afforded other hospitals with proper notice of their opportunity to object to a net addition of 100 beds to Hall County hospitals. We deem this argument to be inapplicable to our review given that Barrow Regional has not cited any evidence to show that other hospitals were affected by or objected to the form of the application or the amendment either during the evidentiary hearing or during the more than four months of time that elapsed between the grant of the CON and that hearing.

[5] We find no suggestion that the DCH final decision violated any of the remaining elements of the judicial review provision of the statute, i.e., that the decision was made "(1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency"; or "(4) Affected by other error of law." See OCGA § 31-6-44 (m) (1994).

minimum time review standards and other benchmarks at specific intervals to protect all interested parties and ensure the orderly investigation and disposition of an application (see Ga. Comp. R. & Regs. r. 111-2-2-.07)." It concluded that the rules mandated a new application because of the "gross change in the scope of the project." It also found that DCH "did not do any analysis of whether keeping NGMC's Lanier Park facility open would result in a change in the viability of the business plans of each hospital." It therefore remanded the case "for consideration as a new application" so that there would be "a complete and thorough analysis of all the relevant facts, circumstances, and data" given the scope of the change.

"[I]f arbitrary and capricious action is alleged the [reviewing] court must determine whether a rational basis exists for the decision made. This is a question of law." (Citations and punctuation omitted.) *Gwinnett Hosp.*, 262 Ga. App. at 883, quoting *Sawyer v. Reheis*, 213 Ga. App. 727, 729-730 (2) (445 SE2d 837) (1994). The same case defines "arbitrary" as

> fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic.

(Citations and punctuation omitted.) *Gwinnett Hosp.*, 262 Ga. App. at 883.

DCH has adopted rules and regulations to administer the CON program. The specific rule governing CON review procedures, including amendments to applications, is Ga. Comp. R. & Regs. r. 111-2-2-.07. That rule specifically allows an applicant to file an amendment to an application for "[a] reduction *or increase in the number of proposed beds. . . .*" (Emphasis supplied.) Ga. Comp. R. & Regs. r. 111-2-2-.07 (1) (g) (2) (ii). The same rule provides an amendment is allowed for "[a] reduction or subtraction in the scope of the original application"; but where an amendment effects a "*total change in or addition to the scope of an application*," such a change "would require the submission of a new application." (Emphasis supplied.) Ga. Comp. R. & Regs. r. 111-2-2-.07 (1) (g) (2) (vi), (h). Determination of whether an amendment constitutes a total change is in the hands of DCH:

> If the Department determines that the amendment constitutes a total change in either the scope, location, or legal applicant, the original application will be considered to be withdrawn and the applicant will be so notified.

Id. Thus, as Barrow argues, the case turns on whether NGMC's amended application should be considered an "increase in the number of proposed beds" in the application as opposed to a "total change in or an addition to the scope of an application." None of these terms is defined in the rules.

DCH's former executive director testified that DCH waited to receive NGMC's amendment before determining whether the proposed changes fell within the scope of the original application. When DCH received the amendment it examined whether the amendment constituted a "total change of scope" or a "substantial change" in scope, and determined that it did not. The executive director explained that DCH "routinely" accepts amendments where the only change is to the applicable standard — such as "new" vs. "replacement" — for determining need under the Hospital Bed Rule. This sometimes occurs where DCH has already determined that there is a need for an increased number of beds. Given these considerations and the rule itself, the executive director testified that he did not consider NGMC's amendment to constitute a "total change" in the scope of the application. He explained that both the original and the amended applications sought to certify a new hospital, and the amended application did not change the location, size, costs, proposed services, or ownership of the proposed hospital; none of the particulars regarding the new hospital had changed in any material way. He also testified that NGMC's decision to keep Lanier Park open was not considered a "total change" in the scope of the project nor even a "significant change" or a "substantial change." He explained that DCH had already run a need analysis for a new facility in southern Hall County and that it projected a need for the new beds even with Lanier Park remaining open. He added that DCH had permitted amendments with greater scope changes in other matters. Thus he concluded that the amendment was acceptable.

By law, a reviewing court "may reverse or modify the [agency's] final decision only if substantial rights of the appellant have been prejudiced . . ." by one of the statutory grounds for reversal, here, that the agency's decision was "(3) Made upon unlawful procedures; . . . or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 31-6-44 (m) (1994).

With regard to prejudice, Barrow Regional argues that its substantial rights were prejudiced by DCH allowing the amendment because without the benefit of three or four months of additional time that a new application would provide, it did not have adequate time to oppose an application for a new hospital. But we find little if any possible prejudice because Barrow Regional opposed NGMC's

60

amended application and it participated in an evidentiary hearing, held over four months later, where these issues were fully addressed. With regard to arbitrariness or the use of unlawful procedures, two aspects of DCH's Rule 111-2-2-.07 could apply to the current facts: NGMC's amendment could be considered an "increase in the number of proposed beds" covered by the application, where amendment is allowed, or it could be considered "an addition to the scope of an application," where a new application is required. Furthermore, the types of changes allowed as an amendment under DCH rules does not appear to be an exclusive list; in fact, DCH presented evidence that there were other possible amendments that did not fall on the list but also did not require a new application. Thus, it was within DCH's discretion to determine whether NGMC's proposed amendment required a new application for a CON. All in all, we conclude that the DCH's interpretation of the applicable rules as requiring only an amendment was not plainly erroneous. See *Babush*, 257 Ga. at 792.

Accordingly, we find that DCH had a rational basis for granting NGMC's application for a CON for the proposed South Hall Hospital. The superior court erred in concluding otherwise. See, e.g., *Sawyer*, 213 Ga. App. at 729-730 (2).

*Judgments reversed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 23, 2010 — 

*Davidson, Hopkins & Alexander, Robert D. Alexander, Jr., Parker, Hudson, Rainer & Dobbs, Armando L. Basarrate II, David L. Fenstermacher, Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Alex F. Sponseller, Assistant Attorney General*, for Northeast Georgia Medical Center, Inc.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Alex F. Sponseller, Assistant Attorney General*, for Georgia Department of Community Health.

*Balch & Bingham, Michael J. Bowers, Christopher S. Anulewicz, Malissa Kaufold-Wiggins*, for Winder HMA, Inc.

