**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 12, 2016**

# In the Court of Appeals of Georgia

A16A0120. TANNER MEDICAL CENTER, INC. d/b/a TANNER
    MEDICAL CENTER-VILLA RICA et al. v. VEST
    NEWNAN, LLC d/b/a NEWNAN BEHAVIORAL
    HOSPITAL et al.

A16A0121. GEORGIA DEPARTMENT OF COMMUNITY
    HEALTH v. VEST NEWNAN, LLC d/b/a NEWNAN
    BEHAVIORAL HOSPITAL et al.

BOGGS, Judge.

In these consolidated appeals, the Georgia Department of Community Health ("DCH") denied Vest Newnan, LLC d/b/a Newnan Behavioral Hospital ("Vest") a Certificate of Need ("CON") to establish an inpatient psychiatric hospital. The trial court reversed the decision of DCH and ordered it to grant the CON, and this court granted applications for discretionary review filed by DCH and the hospitals that opposed the CON. For the reasons explained below, we reverse the trial court's judgment and affirm the decision of DCH in both cases.

As our court explained in *Palmyra Park Hosp. v. Phoebe Sumter Med. Center*, 310 Ga. App. 487 (714 SE2d 71) (2011),

> The CON program, OCGA § 31-6-40 et seq., establishes a comprehensive system of planning for the orderly development of adequate health care services throughout the state. OCGA § 31-6-1. DCH is the "lead planning agency for all health issues" in Georgia. OCGA § 31-2-1 (1). OCGA § 31-6-42 (a) specifies that DCH will issue a CON that is "consistent with" a list of general considerations, including the establishment of a need for the services. Under DCH regulations, "need" is based on several factors, including area population and the use of existing services. OCGA § 31-6-42 (a) (2); Ga. Comp. R. & Regs. r. 111-2-2-.24 (3) (b) . . .
>
> The administration of the CON program requires a particularly high level of expertise and specialization. The DCH rules promulgated to administer the program are detailed and lengthy. See, e.g., Ga. Comp. R. & Regs. r. 111-2-2-.07, which describes the review procedures for CON applications. Both the hospital seeking a CON and the hospitals opposing it gather and organize vast amounts of data, expert testimony, and other evidence which are presented to the agency staff, which then interprets and synthesizes the evidence and applies it to the agency rules. See OCGA § 31-6-43. The initial staff decision must be issued within a relatively short period of time, at most 150 days after the CON application is complete. OCGA § 31-6-43 (d), (i).

Further administrative review is also highly specialized. The hearing officer who reviews the initial DCH staff decision is one of five members of the CON Panel, all of whom are appointed by the Governor and are attorneys "who are familiar with the health care industry but who do not have a financial interest in or represent or have any compensation arrangement with any health care facility." OCGA § 31-6-44 (a), (b). The commissioner of community health then reviews the hearing officer's decision upon request and issues the final agency decision. OCGA § 31-6-44 (k), (m).

Id. at 488 and 491-492 (1).

OCGA § 31-6-40 (a) (1) provides that "[o]n and after July 1, 2008, any new institutional health service shall be required to obtain a certificate of need pursuant to this chapter. New institutional health services include . . . [t]he construction, development, or other establishment of a new health care facility." And a "health care facility" includes a hospital, which in turn is defined as "an institution which is primarily engaged in providing to inpatients, . . . treatment, and care of injured, disabled, or sick persons or rehabilitation services for the rehabilitation of injured, disabled, or sick persons. Such term includes public, private, psychiatric, rehabilitative, geriatric, osteopathic, and other specialty hospitals." OCGA § 31-6-2 (17) and (21).

The record reveals that in August 2013, Vest filed a CON application to establish a new freestanding 60-bed acute care psychiatric and substance abuse inpatient hospital in Coweta County, Georgia. After review, DCH denied the application. Vest timely appealed DCH's denial with Coweta County and the City of Newnan intervening in the action on its behalf. Three other healthcare providers, who opposed Vest's CON application (hereinafter "the opposing hospitals"),[1] intervened in support of DCH.

Following a de novo administrative hearing during which over 20 witnesses testified, the hearing officer affirmed DCH's denial of the CON in a 28-page decision. The hearing officer concluded that Vest did not show a need for a new psychiatric inpatient program, that it had "not met its burden of establishing that its proposed project's costs and methods of construction are reasonable and adequate," and that it had "not met its burden of establishing no adverse impact on similar existing and approved programs in the planning region . . . ." He concluded further that

> the proposed project would constitute an unnecessary duplication of services, would have an unreasonable effect on payors, would not foster improvements or innovations, would not have a positive relationship to

---

[1]Tanner Medical Center, Inc., UHS of Anchor, LP, and RiverWoods Behavioral Health, LLC.

4

the existing health care delivery system, and is not reasonably consistent with the relevant goals and objectives of the State Health Plan. Thus, the proposed project is inconsistent with [Ga. Comp. R. & Regs. r.] 11-2-2-0.9 (1) (a), (e), (h), and (m) and OCGA §§ 31-6-42 (a) (1), (5), (8), and (13).

Vest then appealed the hearing officer's decision to the DCH Commissioner, who affirmed the hearing officer's decision and adopted it in a final order. See OCGA § 31-6-44 (m) ("decision of the commissioner shall become the department's final decision by operation of law").

Following this third denial, Vest, Coweta County, and the City of Newnan petitioned for judicial review. The Coweta County Superior Court reversed DCH's decision. The court concluded that the service-specific need rule is unconstitutional on its face, and that the "'adverse impact' and 'relationship to the delivery system analysis' rests upon the unconstitutional service-specific need rule." The court concluded further that the manner in which DCH reviewed Vest's application was arbitrary and capricious because the DCH reviewer did not take notes during his review or perform any need or adverse impact analysis, and because Vest had no notice "that construction costs were considered an issue." DCH and the opposing

5

hospitals appeal from this ruling. In Case No. A16A0120, the opposing hospitals appeal, and in Case No. A16A0121, DCH appeals.

We begin our analysis with the proper standard of review. "Neither the superior nor the appellate courts review DCH decisions de novo. Instead, the reviewing court determines whether 'substantial evidence' supports the agency's findings of fact, and whether the conclusions of law drawn from those findings of fact are sound." (Citations and punctuation omitted.) *Palmyra Park Hosp.*, supra, 310 Ga. App. at 488. OCGA § 31-6-44.1 (a) provides that

> in conducting such review, the court may reverse or modify the final decision only if substantial rights of the appellant have been prejudiced because the procedures followed by the department, the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the department;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;

6

(5) Not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

1. The opposing hospitals assert that the trial court erred in denying their motion to transfer venue. They contend that venue was improper in Coweta County and that the petition for judicial review should have been filed in Fulton County. "In considering the trial court's ruling on the motion to transfer venue, we affirm the trial court's findings on disputed factual questions relating to venue if there is any evidence to support them. But we review de novo the trial court's application of the law to undisputed facts." (Citation and punctuation omitted.) *Hamner v. Turpen*, 319 Ga. App. 619, 620 (737 SE2d 721) (2013).

OCGA § 50-13-19 (b) provides in part:

Proceedings for review are instituted by filing a petition within 30 days after the service of the final decision of the agency or, if a rehearing is requested, within 30 days after the decision thereon. The petition may

be filed in the Superior Court of Fulton County or in the superior court of the county of residence of the petitioner; or, *if the petitioner is a corporation, the action may be brought in the Superior Court of Fulton County or in the superior court of the county where the petitioner maintains its principal place of doing business in this state.*

(Emphasis supplied.) In denying the motion to transfer venue, the trial court concluded that Vest's "principal place of business in this state" is Coweta County because it listed a Coweta County address on its CON application and submitted a letter of intent to purchase the property in Coweta County. The court held in the alternative that "the presence of Coweta County and the City of Newnan is sufficient to make proper venue." The opposing hospitals assert that Vest does not have a principal place of doing business in Georgia so venue lies in the superior court of Fulton County. They argue that a letter of intent to purchase property is not "doing business," and that even if venue is proper in Coweta County Superior Court for the City of Newnan and Coweta County, Vest is still required to file its petition for judicial review in Fulton County.

Vest submitted the affidavit of its vice president, who averred that Vest submitted an offer to purchase an old hospital in Coweta County and listed the address for the old hospital as its address on the CON application, that Vest's

8

principal place of doing business in Georgia is in Coweta County, and that its "only business dealings in Georgia have been in Coweta County."

OCGA § 50-13-19 (b) does not define "principal place of doing business in this state." But this phrase is distinguishable from "principal place of business" as in OCGA § 14-2-510 (b) (4) or as defined in Black's Law Dictionary (9th ed. 2009) ("The place of a corporation's chief executive offices, which is typically viewed as the 'nerve center'"). The legislature has provided that venue for the purposes of a corporation seeking judicial review under the Georgia Administrative Procedure Act may be where it "maintains its principal place of *doing* business *in this state.*" (Emphasis supplied.) See OCGA § 50-13-19 (b).

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). Black's Law Dictionary (9th ed. 2009), defines "doing business" as "[t]he act of engaging in business activities." In this case, Vest began the process

9

of purchasing property and applied for a CON to develop a psychiatric hospital in Coweta County. It therefore engaged in business activities such that venue was proper there. The trial court accordingly did not err in its denial of the motion to transfer venue. See, e. g., *Bd. of Regents of the Univ. Sys. of Ga. v. Jordan*, 335 Ga. App. 703, 703-704 (1) (782 SE2d 809) (2016) (trial court's denial of motion to transfer venue proper under plain reading of statutory venue provision).

2. The applicants argue that the trial court erred in concluding that DCH reviewed Vest's application in an arbitrary and capricious manner, and that it substituted its judgment for that of DCH. "If arbitrary and capricious action is alleged the reviewing court must determine whether a rational basis exists for the decision made. This is a question of law." (Citations and punctuation omitted.) *Northeast Ga. Med. Center v. Winder HMA*, 303 Ga. App. 50, 58 (2) (b) (693 SE2d 110) (2010). "Arbitrary" has been defined as "fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic." (Citation and punctuation omitted.) Id.

(a) The court concluded that because the DCH reviewer did not take notes during his review of the CON application, and did not perform his own need or adverse impact analysis, DCH's actions were "inconsistent with a deliberative health planning process, effectively allowing [DCH] to evade objective review of its action." But we find no requirement in the statutory framework of the CON program or elsewhere in the DCH rules requiring the reviewer to take notes or perform his own need and adverse impact analysis. The reviewer explained that he was not trained to take notes during the review process but was instead trained to use highlighter pens and "sticky tabs" as "[y]ou go through the application." Under these circumstances, we cannot say as a matter of law that DCH's review of the CON application was "non-rational" or "not done or acting according to reason or judgment." See, e. g., id. (where DCH had rational basis for grant, superior court erred in concluding otherwise). The trial court therefore erred in concluding that the procedure employed by DCH was arbitrary and capricious on this ground.

(b) The court also concluded that DCH reviewed the CON application in an arbitrary and capricious manner because DCH did not provide Vest notice of potential issues regarding architectural or construction costs on the sixty-day meeting agenda. Ga. Comp. R. & Regs. r. 111-2-2-.07 (f) provides:

11

If during the first two (2) months of the review of the application the Department finds there are factors that create a potential for denial of the application, the Department shall, on or before the sixtieth (60th) day of the review period, provide the applicant an opportunity to meet with the Department. The problems with the application will be described and an opportunity offered to amend or to withdraw the application or to submit additional information. The sixty (60) day meeting with the applicant(s) is restricted to the Department and the applicant(s). Parties opposing an application(s) may not attend or participate in an applicant sixty (60) day meeting. Such addition information must be submitted prior to the seventy-fifth (75th) day of the review period.

Therefore only *if* the DCH finds problems with the application *during the first two months of review*[2] is it required to describe those problems and allow the applicant an opportunity to submit additional information. There has been no showing here that DCH failed to comply with this requirement. Neither the trial court nor the parties point to evidence that DCH, within the first 60 days of review, made a finding regarding potential problems with architectural and construction costs and failed to notify DCH. Moreover, even if Vest was not put on notice of this issue until DCH's

---

[2]The review process is limited to 120 days unless the time is extended, see Ga. Comp. R. & Regs. r. 111-2-2-.07 (1) (b) and (d).

12

initial decision,[3] Vest had the full opportunity to submit evidence on this issue in the de novo hearing before the appeal panel, and the hearing officer addressed the arguments raised by the parties concerning construction costs in its written decision affirming DCH's initial CON denial. The trial court therefore also erred in concluding that DCH acted arbitrarily and capriciously on this ground.

3. The appellants argue, that notwithstanding the trial court's conclusion that the service-specific need rule is unconstitutional, there were other independent grounds to deny Vest's application. The court found that adverse impact "rests upon the unconstitutional service-specific need rule," and therefore DCH's adverse impact and relationship-to-the-delivery-system conclusions must also be reversed because they are "inextricably tied to need methodologies."

OCGA § 31-6-42 (a) (8), the relationship-to-the-delivery-system consideration, provides that:

> The written findings of fact and decision, with respect to the department's grant or denial of a certificate of need, shall be based on the applicable considerations specified in this Code section and reasonable rules promulgated by the department interpretive thereof.

---

[3]The initial decision stated that "it is not clear from the documents provided by the applicant that all the associated costs for each specialized service have been properly accounted for in the renovation of its proposed site."

The department shall issue a certificate of need to each applicant whose application is consistent with the following considerations and such rules deemed applicable to a project . . . (8) The proposed new institutional health service has a positive relationship to the existing health care delivery system in the service area.

Similarly, Ga. Comp. R. & Regs. r. 111-2-2-.09 (1) (h) provides that:

The burden of proof for producing information and evidence that an application is consistent with the applicable considerations and review policies, which follow, shall be on the applicant. In conducting review and making findings for Certificates of Need, the Department will consider whether: . . . (h) the proposed new institutional health service has a positive relationship to the existing health care delivery system in the service area.

Ga. Comp. R. & Regs. r. 111-2-2-.26 (3) (d), the "adverse impact" consideration, provides in part that "[a]n applicant for a new or expanded psychiatric and/or substance abuse inpatient program(s) shall document that the establishment or expansion of its program(s) will not have an adverse impact on similar existing and approved programs in its planning region." These two considerations are independent of the consideration of need. See OCGA § 31-6-42 (a) (2) and Ga. Comp. R. & Regs. r. 111-2-2-.09 (1) (b), 11-2-2-.26 (3) (a). And OCGA § 31-6-42 (a) lists 15 other

considerations in addition to need and relationship to the existing health care delivery system.

The trial court cites only to the hearing officer's decision to conclude that adverse impact and relationship to the delivery system are "inextricably tied to need methodologies." Specifically, it cites the statement that Vest's proposed service area population is too small to generate sufficient incremental growth to support a new 60-bed hospital, "its projected patient volume largely is dependent on the redirection of admissions from existing providers . . . [it] must take 52.5% of its adult admissions . . . and 77.1% of its pediatric admissions . . . from existing providers to attain its projected level of utilization." But the fact that Vest's need calculations may have been considered in evaluating whether there would be an adverse impact on other providers, does not automatically invalidate the adverse impact consideration. The trial court found that the need rule was unconstitutionally vague because it "does not provide persons of common intelligence a common understanding as to how [DCH] evaluates need." The court found that the vagueness is derived from the failure of the rule to provide the applicant with the methodology that DCH will use to assess need, not that the analysis of need shown by Vest was itself inadequate. So even if the need rule is unconstitutionally vague for the reason given by the trial court, the facts

supporting Vest's claim of need do not invalidate DCH's use of those facts in consideration of whether there would be an adverse impact. In other words, simply because one fact can play into more than one of the many considerations under OCGA § 31-6-42 (a), does not mean that those other considerations are conflated or unconstitutional by association.

Moreover, even if the particular conclusion of the hearing officer pointed out by the trial court could somehow be construed as an improper incorporation of a need analysis into the analysis of adverse impact, the hearing officer also made other findings in support of its adverse impact conclusion: Vest's impact analysis is based on an unrealistic projection that all of its patients will originate solely from the proposed service area, an unrealistic projection that the volume of service area psychiatric and substance abuse cases will nearly double in the next few years alone, and an overinflated market share. The hearing officer found that "[a]s a result, the likely adverse impact on existing providers, including Willowbrooke, is understated. Further [Vest]'s adverse impact analysis failed to account for Tanner's additional 30 pediatric beds that will be brought online by the end of 2014." The hearing officer concluded that Vest

has not met its burden of establishing no adverse impact on similar existing and approved programs in its planning region, specifically Willowbrooke's existing and soon-to-be expanded inpatient services. Thus, the proposed project is inconsistent with DCH Rule 11-2-2-.26 (3) (d). The failure to demonstrate no adverse impact also renders the project inconsistent with DCH Rule 111-2-2-.09 (1) (h) and OCGA § 31-6-42 (a) (8).

"A reviewing court may not substitute its judgment as to the weight of evidence on questions of fact." *Hosp. Auth. v. State Health Planning Agency*, 211 Ga. App. 407, 410 (4) (438 SE2d 912) (1993). Here the trial court erred in concluding that DCH's adverse impact analysis was "inextricably tied to need methodologies." And because the trial court failed to consider whether the CON could be properly denied for Vest's failure to establish no adverse impact, we must do so here.

"[O]ur duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Northeast Ga. Med. Center* supra, 303 Ga. App. at (2). And in doing so the appropriate standard is whether there was substantial evidence to support the agency decision. Id. at 55 (2) (a). "[W]e neither reweigh the evidence, perform a de novo review, nor substitute our own judgment for

17

that of the hearing officer as to the weight of the evidence." (Citations and punctuation omitted). Id. at 55-56 (2) (a).

The record reveals that DCH's conclusion that Vest did not meet its burden of establishing no adverse impact on similar existing programs is supported by substantial evidence, in particular, expert testimony and exhibits supporting DCH's conclusions regarding Vest's unrealistic projections, overinflated market share, and failure to account for Tanner's additional 30 pediatric beds. In light of record supporting DCH's final decision, we must affirm its denial of the CON. See, e. g., *State Health Planning Agency v. Cribb Indus.*, 204 Ga. App. 285, 287-288 (2) and 288 (3) (419 SE2d 123) (1992).

4. In light of our reversal of the trial court's judgment and affirmance of DCH's denial of the CON on other grounds, we make no decision here with regard to the trial court's ruling that the need rule, Ga. Comp. R. & Regs. r. 111-2-2-.26 (3) (a), is unconstitutional. This and the remaining enumerations in both appeals are rendered moot by our holdings in Divisions 2 and 3.

*Judgment reversed in both cases. Barnes, P. J., and Rickman, J., concur.*