**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A2129, A16A2130. KENNESTONE HOSPITAL, INC. v.
    CARTERSVILLE MEDICAL CENTER, INC. et al.; and
    GEORGIA DEPARTMENT OF COMMUNITY HEALTH v.
    CARTERSVILLE MEDICAL CENTER, INC. et al.

McMILLIAN, Judge.

Kennestone Hospital, Inc. d/b/a WellStar Kennestone Regional Medical Center

("Kennestone") and the Georgia Department of Community Health ("DCH") each

challenge the trial court's order reversing the final decision of DCH awarding a

Certificate of Need ("CON") to Kennestone for an ambulatory surgery center in

Acworth, Georgia. The trial court ruled in favor of Cartersville Medical Center, Inc.

("CMC") and Marietta Outpatient Surgery, Ltd. ("MOS"), which had objected to the

issuance of the CON. We granted both applications for discretionary appeal and

consolidated the cases for review. Kennestone and DCH assert that the trial court's

order is void because it was issued after the trial court lost jurisdiction, and, in the alternative, that the trial court misapplied the atypical barrier exception in several respects. As further set forth below, because the trial court issued its order after DCH's final decision had been affirmed by operation of law, the order was a nullity and must be vacated.

In March 2013, DCH issued a CON batching review cycle notification for ambulatory surgery services.[1] The CON notification stated that there was no numeric need for ambulatory services, but that DCH would consider applications under the

---

[1] Georgia's CON program, codified at OCGA § 31-6-40 et seq.,

establishes a comprehensive system of planning for the orderly development of adequate health care services throughout the state. DCH is the lead planning agency for all health issues in Georgia. OCGA § 31-6-42 (a) specifies that DCH will issue a CON that is consistent with a list of general considerations, including the establishment of a need for the services. Under DCH regulations, need is based on several factors, including area population and the use of existing services.

(Citations and punctuation omitted.) *Tanner Medical Center, Inc. v. Vest Newnan, LLC*, 337 Ga. App. 884, 884-85 (789 SE2d 258) (2016).

2

atypical barrier exception.[2] On May 28, 2013, Kennestone submitted a CON application in which it proposed to develop a 20,000 square-foot multi-specialty, freestanding ambulatory surgery center in Cobb County that would provide a minimum percentage of its services to care for indigent patients. On September 24, 2013, DCH issued an initial decision on Kennestone's application, finding that a CON was warranted. CMS and MOS sought administrative review of this initial decision with the Certificate of Need Appeal Panel (the "Panel"),[3] and following a full evidentiary hearing, the Panel's hearing officer reversed DCH's initial decision, thereby denying the CON. After Kennestone appealed the Panel's decision to the DCH commissioner pursuant to OCGA § 31-6-44 (i), the commissioner, by way of his designee, issued a final decision reversing the hearing officer and granted a CON to Kennestone ("Final Decision").

On October 15, 2014, CMC and MOS filed a petition for judicial review in the Superior Court of Fulton County pursuant to OCGA § 31-6-44.1. Kennestone and

---

[2] The atypical barrier exception standard is an alternative to the numeric need standard set forth in DCH Rule 111-2-2-.40 (3) (b).

[3] The Certificate of Need Appeal Panel is a separate agency whose purpose is "to serve as a panel of independent hearing officers to review [DCH]'s initial decision to grant or deny a certificate of need application." OCGA § 31-6-44 (a).

3

DCH moved to dismiss the petition's declaratory judgment action, and while that motion was pending,[4] the parties requested that the trial court schedule a hearing date within the 120-day window required by OCGA § 31-6-44.1 (b) and then continue the hearing to a later date.[5] On March 31, 2015, the trial court conducted a judicial review hearing. The trial court did not enter its order reversing the Final Decision until May 18, 2015 (the "Order"). This appeal followed.

1. As an initial matter, Kennestone and DCH assert that the trial court's Order is a nullity because it was not issued until after the Final Decision had been affirmed by operation of law pursuant to OCGA § 31-6-44.1 (b). "In construing [the CON judicial review statute], we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms [and] to give words their plain and ordinary meaning. . . . " (Citation and punctuation omitted.) *Lakeview Behavioral Health System, LLC v. UHS Peachford, LP*, 321 Ga. App. 820, 822 (1) (743 SE2d 492) (2013). "Thus, a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the

---

[4] CMC and MOS later voluntarily dismissed the count seeking declaratory judgment.

[5] No party asserts that this procedure was improper under OCGA § 31-6-44.1 (b).

purpose of either limiting or extending its operation." (Citation and punctuation omitted.) Id.

Turning to the language of the statute at issue, OCGA § 31-6-44.1 (b) sets out a specific time line for the judicial review of an order on a CON, including when DCH is required to transmit certified copies of the record and transcript to the superior court clerk to which the case is appealed, timing for notice of the hearing, and when the superior court must hear the case. Relevant to this case, OCGA § 31-6-44.1 (b) provides that:

> if the court does not hear the case within 120 days of the date of docketing in the superior court, the decision of the department shall be considered affirmed by operation of law unless a hearing originally scheduled to be heard within the 120 days has been continued to a date certain by order of the court. In the event a hearing is held later than 90 days after the date of docketing in the superior court because same has been continued to a date certain by order of the court, the decision of the department shall be considered affirmed by operation of law if no order of the court disposing of the issues on appeal has been entered within 30 days after the date of the continued hearing.

Here, the trial court conducted the hearing more than 90 days after the date of docketing on October 15, 2014 because the hearing was continued to March 31, 2015 by order of the court. But the trial court did not enter the Order until May 18, 2015,

5

48 days following the hearing. Thus, it appears that under the plain language of OCGA § 31-6-44.1, the Final Decision was affirmed by operation of law on May 1, 2015, 30 days after the date of the hearing. See *Tanner Medical Center, Inc. v. Vest Newnan, LLC*, 337 Ga. App. 884, 889 (1) (789 SE2d 258) (2016) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant.") (citation omitted).

Although we have not previously addressed when a decision is affirmed by operation of law under OCGA § 31-6-44.1, this Court has reviewed a virtually identical statutory framework found in the Workers' Compensation Act, OCGA § 34-9-105 (b).[6] In *Buschel v. Kysor*, 213 Ga. App. 91, 93 (1) (444 SE2d 105) (1994), this

---

[6] OCGA § 34-9-105 (b) provides in relevant part:

if the court does not hear the case within 60 days of the date of docketing in the superior court, the decision of the board shall be considered affirmed by operation of law unless a hearing originally scheduled to be heard within the 60 days has been continued to a date certain by order of the court. In the event a hearing is held later than 60 days after the date of docketing in the superior court because same has been continued to a date certain by order of the court, the decision of the board shall be considered affirmed by operation of law if no order of the court disposing of the issues on appeal has been entered within 20 days after the date of the continued hearing. If a case is heard within 60 days

6

Court held that an order that was signed on the twentieth day after the hearing but entered one day later failed to meet the 20-day deadline found in OCGA § 34-9-105 (b) and was therefore a nullity. See also *Brassfield & Gorrie v. Ogletree*, 241 Ga. App. 56, 57 (526 SE2d 103) (1999) (superior court lost authority to award attorney fees under OCGA § 9-15-14 (b) after expiration of affirmance by operation of law deadline in Workers' Compensation Act); *Pine Timber Trucking Co. v. Teal*, 230 Ga App. 362, 362 (496 SE2d 270) (1998) (order entered by superior court on twenty-second day after hearing was a nullity).

Moreover, although not directly considering the issue, our Supreme Court has also reviewed similar statutory frameworks, noting that the administrative decision is affirmed by operation of law if the trial court fails to enter an order by the statutory deadline. See, e.g., *Center for a Sustainable Coast v. Coastal Marshlands Protection Committee*, 284 Ga. 736, 737 (670 SE2d 429) (2008) (noting that, in the context of the Coastal Marshlands Protection Act, where the trial court did not act upon the matter in the time specified by OCGA § 12-2-1 (c), the decision of the administrative

---

from the date of docketing in the superior court, the decision of the board shall be considered affirmed by operation of law if no order of the court dispositive of the issues on appeal has been entered within 20 days of the date of the hearing.

7

law judge was affirmed by operation of law); *Rouse v. Department of Natural Resources*, 271 Ga. 726, 727 (524 SE2d 455) (1999) (where superior court held a hearing to review the administrative law judge's decision but did not enter an order within 30 days of the hearing, the case was affirmed by operation of law). See also *Labovitz v. Hopkinson*, 271 Ga. 330, 332-33 (2) (519 SE2d 672) (1999) (general discussion regarding various statutes demanding automatic dismissals or affirmance by operation of law). We find these cases persuasive in construing OCGA § 31-6-44.1.

CMC and MOS seek to avoid this outcome by asserting that the hearing did not close on March 31, 2015 because the trial court did not declare the hearing to be closed at that time and asked the parties to prepare proposed findings of fact and conclusions of law and submit them within two weeks of the hearing. The parties by consent and with approval by the court then extended that date even further, but still within the 30-day time frame. Thus, according to CMC and MOS, the hearing did not close until the proposed findings of fact and conclusions of law were submitted to the trial court on April 22, 2015.

This question turns factually on whether the March 31, 2015 hearing was closed at its conclusion on that day and legally whether requiring parties to submit

8

findings of fact and conclusions of law extends the hearing. At the end of the hearing on March 31, 2015, the following exchange occurred:

> Trial Court: Okay, I will take the matter under advisement. I'm going to ask both sides to prepare a proposed order. I guess that ten days, is that enough? Do you need more?
>
> Counsel for Kennestone: Would two weeks be --
>
> Trial Court: Yes, that's fine.
>
> Counsel for CMC and MOS: Acceptable to us.
>
> Trial Counsel: Okay. Two weeks.

The transcript then indicates that the proceeding was concluded at 5:01 p.m. Subsequently, counsel interacted by electronic mail to come to an agreement to extend the time for filing the proposed orders.

While we agree with CMC and MOS that the trial court did not explicitly state that the hearing was closed at its conclusion on March 31, 2015, CMS and MOS do not provide any law on what is required procedurally to close a hearing, nor have we found any. And we further decline to impose any particular verbiage that the trial court must say in order to formally close a hearing. To the contrary, the trial judge

9

stated that he was taking the matter under advisement, which supports that the trial court considered the hearing closed and that the court was starting the process of evaluating the evidence and arguments to render a decision.

Nor are we persuaded by CMC and MOS's assertion that the hearing remained open because the trial court requested proposed orders at a later date. We find nothing in the language of OCGA § 31-6-44.1 (b) itself to suggest that the submission of proposed orders could serve the same function as an order continuing a hearing to a date certain. And although CMC and MOS point to Ga. Comp. R. & Regs. r. 274-1-.11 (3) for support, this rule governs the conclusion of a hearing in front of a Panel hearing officer and not a hearing conducted during the judicial review phase. Similarly, their reliance on *Jones v. Winn-Lovett Grocery Co.*, 47 Ga. App. 293 (170 SE2d 393) (1933), which did not involve the judicial review of an administrative agency decision or the construction of a statute providing for affirmance by operation of law, is misplaced.

Although this Court has previously acknowledged that a party seeking judicial review may be powerless to force a superior court to issue a timely order, we have nevertheless explained "the language of the statute is clear and this court is without power to avoid the ill-effect created by the statute as written." (Citation and

10

punctuation omitted.) *Coronet Carpets v. Reynolds*, 199 Ga. App. 383, 384 (405 SE2d 103) (1991). See also *Truckstops of America, Inc. v. Engram*, 229 Ga. App. 616, 617 (494 SE2d 709) (1997) ("regardless of whose fault it was or what caused the delay, the court lost jurisdiction of the case" when it did not timely enter an order) (citation and punctuation omitted). Accordingly, we are constrained to find that the trial court lost jurisdiction of the case on May 1, 2015, and its subsequent order was a nullity.

2. Based on our holding in Division 1, we cannot address Kennestone or DHC's remaining enumerations of error. See *Borden v. Holland*, 212 Ga. App. 820, 822 (2) (442 SE2d 916) (1994). And because CMC and MOS did not apply for discretionary appeal from the statutory affirmance of the Final Decision, nothing remains for our consideration. See *Pine Timber Trucking Co.*, 230 Ga. App. at 363 (2).

*Judgments vacated. Miller, P. J., and McFadden, P. J., concur.*