**THIRD DIVISION
ANDREWS, P. J.,
BARNES, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**May 21, 2013**

# In the Court of Appeals of Georgia

A13A0612. LAKEVIEW BEHAVIORAL HEALTH SYSTEMS, LLC v. UHS PEACHFORD, LP et al.

MCMILLIAN, Judge.

Lakeview Behavioral Health System, LLC appeals the superior court's denial of its request for attorney fees pursuant to OCGA § 31-6-44.1 (c). Lakeview sought to recover its fees after it successfully defended a challenge by UHS Peachford, LP d/b/a Peachford Behavioral Health System of Atlanta and UHS of Summitridge, LLC d/b/a Summitridge Hospital (collectively "UHS") to a certificate of need ("CON") for a new acute care psychiatric and substance abuse hospital issued to it by the Georgia Department of Community Health ("DCH"). In this case of first impression, we reverse for the reasons set forth below.

UHS opposed Lakeview's CON from the beginning, filing an opposition to Lakeview's application for the CON in the initial administrative proceeding. After the DCH made its initial decision to grant the CON, UHS appealed to the Certificate of Need Appeal Panel (the "Appeal Panel"), which affirmed the initial DCH decision. The DCH subsequently issued its final order affirming the decision of the Appeal Panel, and UHS petitioned for judicial review in the Superior Court of Fulton County.

UHS contended in its petition that the DCH should have deferred to policy set by the Department of Behavioral Health and Developmental Disabilities ("DBHDD") that focuses on out-patient treatment for public mental health patients.[1] UHS argued that the DCH's grant of a CON to Lakeview to establish a new psychiatric hospital was impermissible because it was based, in part, on consideration of hospital bed space for public mental health patients. Thus, UHS asserted that the DCH's decision "fails to give deference or even to recognize the policy decision of the State agency

---

[1] The DBHDD is the agency charged by the Georgia legislature with administering and supervising state programs for mental health, developmental diseases and addictive diseases. OCGA § 37-1-20. In comparison, the legislature granted the DCH the authority "to administer the certificate of need program established [by state law] and, within the appropriations made available . . . by the General Assembly of Georgia and consistently with the laws of the State of Georgia, a state health plan adopted by the [Board of Community Health]." OCGA § 31-6-21 (a).

charged with assuring the availability of mental health services to public sector patients," and instead "contradicts [the DBHDD's] explicit policy and may undermine its underlying objectives." UHS asserted that "a sharp, irreconcilable conflict" existed between the DBHDD's policy, and the DCH's final decision, which made "a flawed assessment of need based on a patent misread of the [DBHDD's] policies." UHS contended that this conflict is contrary to the regulatory framework for public mental health services that the legislature has established. Aside from this "dispositive legal issue," UHS asserted that the DCH decision was otherwise legally erroneous, not supported by substantial evidence and arbitrary and capricious.

The superior court's April 13, 2012 order found in favor of Lakeview and the DCH on these issues, and Lakeview subsequently filed a motion for attorney fees under OCGA § 31-6-44.1 (c) , which provides:

> A party responding to an appeal to the superior court shall be entitled to reasonable attorney's fees and costs if such party is the prevailing party of such appeal as decided by final order; provided, however, the department shall not be required to pay attorney's fees or costs. This subsection shall not apply to the portion of attorney's fees accrued on behalf of a party responding to or bringing a challenge to the department's authority to enact a rule or regulation or the department's jurisdiction or another challenge that could not have been raised in the administrative proceeding.

3

OCGA § 31-6-44.1 (c).[2] Under the language of the statute, therefore, a party who successfully defeats a challenge to a CON in superior court is entitled to an award of attorney fees unless the challenge fits into one of the three listed exceptions. See Review of Selected 2008 Georgia Legislation, 25 Ga. St. Univ. L. Rev. 219, 245 (2008) (reviewing health-related legislation).

The superior court denied Lakeview's motion for attorney fees, finding that UHS's challenge fit into the jurisdictional exception under OCGA § 31-6-44.1 (c):

> UHS's entire challenge has been that DCH exceeded its jurisdiction by acting in conflict with the policies of DBHDD, the agency charged with administering and providing mental health services to public sector patients in Georgia and by disregarding its statutory and regulatory obligations to require[] Lakeview to show actual numerical need for the proposed project before granting the CON.

The superior court concluded that "[b]ecause the heart of UHS's challenge focused on the DCH's disregard for its own authority, this Court finds that this case is specifically exempted from the award of attorney fees under OCGA § 31-6-44.1 (c)."

---

[2] OCGA § 31-66-44.1 (c) became effective on July 1, 2008, and applies to applications submitted on or after that date.

As its sole enumeration on appeal, Lakeview asserts that the superior court erred in holding that UHS's petition for judicial review fit into the jurisdictional exception under OCGA § 31-6-44.1 (c) because UHS's challenge to the CON was not a challenge to the DCH's jurisdiction within the meaning of the statute.

1. We must first consider the superior court's interpretation of OCGA § 31-6-44.1 (c), to which we apply a de novo review. *Kennedy Dev. Co. v. Camp*, 290 Ga. 257, 258 (719 SE2d 442) (2011). In construing OCGA § 31-6-44.1 (c), "we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *Currid v. DeKalb State Court Probate Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009). Thus, "a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation." (Citation omitted.) *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 792 (3) (498 SE2d 297) (1998).

Here, OCGA § 31-6-44.1 (c) sets out three exceptions to the mandatory award of attorney fees, stating that no fees are recoverable for challenges to "[1] the

[DCH's] authority to enact a rule or regulation or [2] the [DCH's] jurisdiction or [3] another challenge that could not have been raised in the administrative proceeding." The trial court found that UHS's challenge fell under the second exception involving challenges to the DCH's jurisdiction, and UHS does not contend that the other two exceptions apply. Accordingly, we must first determine what the legislature meant by the "jurisdiction" of the DCH.

Lakeview argues that we should interpret the term "jurisdiction" in this context as comparable to a court's subject matter jurisdiction, which the Supreme Court of Georgia has defined as "jurisdiction of the class of cases to which that particular case belongs" and not "jurisdiction over the particular case then occupying the attention of the court." (Citation and punctuation omitted.) *Hopkins v. Hopkins*, 237 Ga. 845, 846 (1) (229 SE2d 751) (1976). Lakeview asserts that because UHS never argued that the DCH lacked jurisdiction to rule upon Lakeview's application for the CON, it never raised a jurisdictional challenge. Lakeview also argues that the trial court's expansive definition of the term "jurisdiction" as applying to any challenge to DCH's authority would undermine the mandatory fee provision, allowing the exception to swallow the rule.

6

UHS counters that Lakeview's suggested definition would render the jurisdiction exception meaningless because it posits that no one would ever challenge the DCH's clear authority to issue CONs. UHS argues, instead, that it challenged the DCH's jurisdiction when it asserted that the DCH did not have the authority to grant the CON in this case because that decision "necessarily intruded upon and conflicted with the jurisdictional purview of DBHDD." UHS, therefore, equates the DCH's authority with "jurisdiction" and asks us to interpret OCGA § 31-6-44.1 (c) as precluding any award of attorney fees because UHS objected to the issuance of the CON on the ground that the DCH exceeded its authority by acting in conflict with the policy of the DBHDD.

In resolving this issue, we turn to the language of the statute. The legislature provided an exception for challenges to the DCH's "jurisdiction," and we must presume that the legislature's use of that term "was a matter of considered choice."[3] (Citation and punctuation omitted.) *Deutsche Bank Nat. Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga. App. 307, 311 (1) (b) (704 SE2d 823) (2010). Thus, we

---

[3] The mandatory fee award appears to have been the subject of some debate within the House Special Committee on Certificate of Need and the resulting statutory provisions apparently resulted from legislative compromise on the issue. See Review of Selected 2008 Georgia Legislation, 25 Ga. St. Univ. L. Rev. at 244-245.

presume the legislature intended to provide an exception to the mandatory award of fees for challenges to the DCH's *jurisdiction*. See *Citibank (South Dakota), N.A. v. Graham*, 315 Ga. App. 120, 121-122 (1) (726 SE2d 617) (2012) (in interpreting statutes, courts must presume that legislature "meant what it said and said what it meant").

In contrast, the legislature's first exception to the mandatory fee award under OCGA § 31-6-44.1 (c) precludes an attorney fee award when a party challenges "the [DCH's] *authority* to enact a rule or regulation." (Emphasis supplied.) The legislature's word usage in these provisions suggests that the legislature intended the DCH's "jurisdiction" to mean something different than its authority. A review of OCGA § 31-66-44.1 as a whole supports this conclusion. Under OCGA § 31-6-44.1 (a) (2), for example, a trial court may reverse or modify the final administrative decision on a CON if the conclusions contained in the final decision are "[in] excess of the statutory *authority* of the [DCH]." (Emphasis supplied.)[4] Therefore, if the

---

[4] Numerous other related statutes relating the CON program also address the "authority" of the DCH. See OCGA § 31-6-40.1 (c.1) (3) (granting the DCH "the *authority* to inspect any books, records, papers or other information" of a destination cancer hospital to confirm information contained in the hospital's annual statement); OCGA § 31-6-40.2 (d) (providing that nothing in the Code section shall limit [the DCH's] *authority* to regulate perinatal services in ways or for time periods not addressed by the . . . Code section"); OCGA § 31-6-42 (c) (2) (granting the DCH "the

8

legislature had intended to provide an exception to the mandatory attorney fee award for challenges asserting that the DCH acted "in excess of [its] statutory authority," it clearly had the language to do so and, in fact, chose to create an exception for challenges to the DCH's "authority" to enact a rule or regulation. The legislature then chose to enact an additional exception for challenges to the DCH's "jurisdiction."

And although "jurisdiction" is not defined in this context, the legislature also used the term in addressing the appeal procedure before the Appeal Panel. Under OCGA § 31-6-44 (k), the commissioner of community health may either accept the Appeal Panel's decision or "reject or modify the conclusions of law over which the department has substantive *jurisdiction* and the interpretation of administrative rules over which it has substantive *jurisdiction*." (Emphasis supplied.) The use of "jurisdiction" in this provision suggests that the legislature intended the term to refer

---

*authority* to vary or modify strict adherence to the provisions of this chapter and the rules enacted pursuant hereto in considering the special needs of such facility and its population served and to avoid an adverse impact on the facility and the population served thereby" with regard to minority administered hospitals); OCGA § 31-6-45 (e) (granting the DCH "the *authority* to make public or private investigations or examinations inside or outside of this state to determine whether [any law, rule, regulation or order under OCGA §] 31-6-40 has been violated" and "the *authority* . . . to require the production of any books, records, papers, or other information" relating to any CON issue) (emphasis supplied in each statute).

9

to matters over which the DCH has the power to act and thus to something broader than the DCH's authority in a particular case.

Construing these statutory provisions together, we conclude that the legislature used the term "jurisdiction" OCGA § 31-6-44.1 (c) to refer to the DCH's general power to act and not to its authority to act with regard to a particular CON. See generally *Northeast Atlanta Bonding Co. v. State*, 308 Ga. App. 573, 579 (1) (707 SE2d 921) (2011) (statutes must be construed in relation to other statutes in the same statutory scheme, and "all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto.") (citations and punctuation omitted.)

Such a distinction between "jurisdiction" and "authority" is supported by the Supreme Court's decision in *Georgia Dept. of Community Health v. Georgia Society of Ambulatory Surgery Centers* ("GSASC"), 290 Ga. 628 (724 SE2d 386) (2012), which addressed a somewhat analogous exception to the exhaustion of remedies doctrine. In that case, the Georgia Supreme Court considered whether this Court had properly addressed the merits of GSASC's appeal even though it failed to exhaust its administrative remedies. GSASC asserted that the DCH exceeded its authority in

asking certain questions on a statutorily required annual survey. This Court had addressed the merits of GSASC's argument despite its failure to exhaust the administrative process, in part, because the Court determined that GSASC was challenging the DCH's authority and power to act, which falls within a recognized exception to the exhaustion requirement. *Georgia Society of Ambulatory Surgery Centers v. Georgia Dept. of Community Health*, 309 Ga. App. 31, 39-40 (2) (b) (710 SE2d 183) (2011). But the Supreme Court reversed, finding that the exception does not apply unless a plaintiff is attacking the agency's assertion of jurisdiction on its face or in its entirety, and thus the allegations must be that the agency acted "wholly outside its jurisdiction" in order to avoid the exhaustion requirement. *Georgia Dept. of Community Health*, 290 Ga. at 631 (2). The Supreme Court concluded that GSASC's claim that the agency merely acted ultra vires was insufficient to avoid the exhaustion requirement. Id. See also *We, the Taxpayers v. Bd. of Tax Assessors of Effingham County*, 292 Ga. 31, 34 (1) (734 SE2d 373) (2012) (no challenge to the board's jurisdiction where "there is no question that the properties for which the Board has issued tax assessments are subject to the Board's authority to do so"); *City of Atlanta v. Hotels.com, L.P.*, 285 Ga. 231, 233 (674 SE2d 898) (2009) (exhaustion of remedies does not apply where challenge goes to the applicability of tax

11

ordinance); *Cravey v. Southeastern Underwriters Assn.*, 214 Ga. 450, 457 (3) (105 SE2d 497) (1958) (exhaustion doctrine "does not apply where the defect urged by the complaining party goes to the jurisdiction or power of the [involved] agency to issue [a decision]").[5]

We find, therefore, that the legislature used the term "jurisdiction" under OCGA § 31-6-44.1 (c) because it intended to refer to something other than a challenge asserting that the DCH exceeded its statutory authority or acted ultra vires in issuing a particular decision; rather, we conclude that the legislature intended the second exception to encompass challenges to the DCH's jurisdiction as a whole.[6] In other words, a jurisdictional challenge questions whether the DCH can act, not how it acted.

---

[5] See also *Higdon v. City of Senoia*, 273 Ga. 83, 86 (3) (538 SE2d 39) (2000) ("All statutes are presumed to be enacted with full knowledge of existing law and their meaning and effect is to be determined with reference to the constitution as well as other statutes and decisions of the courts") (citation omitted).

[6] Our interpretation of the jurisdictional exception under OCGA § 31-6-44.1 (c) does not render the provision mere surplusage. It is conceivable, for example, that if an exemption from the CON requirements under OCGA § 31-6-47 does not clearly apply, an applicant, out of an abundance of caution, could seek a CON but also assert that it should not be subject to the CON requirements under the statutory exemptions. The latter argument would present a challenge to DCH's jurisdiction.

12

2. Next, we must determine whether UHS's challenge to the Lakeview CON fell within the jurisdictional exception under OCGA § 31-6-44.1. This determination presents a legal question, and thus "[owing] no deference to the trial court's ruling, we apply the 'plain legal error' standard of review." (Citation omitted.) *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

Lakeview argues that because UHS did not assert that the DCH acted wholly outside its jurisdiction, but rather merely asserted that it acted ultra vires in issuing the CON to Lakeview, UHS did not raise a jurisdictional challenge. We agree. UHS did not assert that the DCH lacked the jurisdiction to issue Lakeview a CON for a new, private psychiatric and substance abuse hospital.[7] Rather, UHS argued that the DCH's decision on Lakeview's CON conflicted with the DBHDD policy on treating public mental health patients. This argument, which in effect, asserts that the DCH exceeded its authority in approving the CON, does not present a challenge to the DCH's jurisdiction within the meaning of OCGA § 31-6-44.1 (c). Accordingly, because the trial court erred in denying Lakeview's motion for attorney fees on this

---

[7] Indeed, psychiatric and substance abuse hospitals are not among the facilities exempted from the CON requirements under Georgia law, OCGA § 31-6-47 (a), and the DCH has adopted specific rules addressing CONs for such facilities. See Ga. Comp. R. & Regs., r. 111-2-2-.11 (1) (a) (7) and 111-2-2-.26.

13

basis, we reverse the trial court's denial of Lakeview's motion and remand for the trial court's determination of the amount of reasonable attorney fees to be awarded to Lakeview.

*Judgment reversed. Andrews, P. J., and Barnes, P. J., concur.*