**THIRD DIVISION**
**GOBEIL, J.,**
**COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2019**

# In the Court of Appeals of Georgia

A18A2009. COBB HOSPITAL, INC. d/b/a WELLSTAR COBB HOSPITAL et al. v. GEORGIA DEPARTMENT OF COMMUNITY HEALTH et al.

HODGES, Judge.

In March 2016, Emory University d/b/a Emory University Hospital Smyrna ("EUHS") filed an application with the Georgia Department of Community Health ("DCH") for a new certificate of need ("CON") to undertake improvements and renovations totaling approximately $33.8 million at the former Emory-Adventist Hospital. Cobb Hospital, Inc. d/b/a Wellstar Cobb Hospital and Kennestone Hospital, Inc., d/b/a Wellstar Kennestone Hospital (collectively, "Wellstar") objected to EUHS' application, arguing that the application "seeks to develop a new hospital" rather than reopening and renovating the former Emory-Adventist Hospital. The DCH granted EUHS' application and awarded it a new CON for the proposed improvements and

renovations. Wellstar appealed to the Certificate of Need Appeal Panel (OCGA § 31-6-44) ("CON Appeal Panel"), and a panel hearing officer affirmed the DCH's decision. Wellstar objected to the panel hearing officer's judgment and appealed to the DCH commissioner, arguing, in part, that the panel hearing officer erroneously concluded that "[i]t is not the function of the CON Appeal Panel to consider questions of CON and licensure status. . . ." The DCH commissioner affirmed the panel hearing officer's decision, and the Superior Court of Cobb County denied Wellstar's petition for judicial review.

In this appeal, we are asked to decide whether the CON Appeal Panel, in an appeal from a decision by the DCH on a health care facility's application for a *new* certificate of need, has the authority to independently review the status of the facility's *existing* certificate of need.[1] We conclude that the plain language of OCGA § 31-6-44 and Ga. Comp. R. & Regs. r. 274-1-.09 precludes the CON Appeal Panel from reviewing the DCH's initial determination regarding a health care facility's existing CON status; rather, any such challenges to the DCH's initial determination

_____

[1] The CON Appeal Panel "consists of a panel of independent hearing officers [that] is an agency separate from DCH and serves to review DCH's initial decision to grant or deny a CON application. OCGA § 31-6-44 (a)." *Kennestone Hosp. v. Dept. of Community Health*, 346 Ga. App. 70, 72, n. 5 (815 SE2d 266) (2018).

must be brought through a different process. Because there is no dispute that substantial evidence supported the panel hearing officer's findings of fact and that the officer's conclusions of law that EUHS was entitled to a new CON based on those facts were sound, we affirm the superior court's judgment denying Wellstar's petition for judicial review.

The record reveals that Smyrna Hospital, Inc., an 88-bed community hospital, opened on South Cobb Drive in Smyrna in 1974. Adventist Health System acquired the hospital in 1976. In 1995, Emory Healthcare entered a joint venture agreement with Adventist Health System and obtained a 35% share ownership in the hospital; thereafter, the hospital was renamed Emory-Adventist Hospital. Due to declining revenues, Emory-Adventist ceased operations on October 31, 2014. In April 2015, Emory University acquired sole ownership of the hospital, which was renamed Emory University Hospital Smyrna and reopened on October 20, 2015.[2]

Since it first opened as Smyrna Hospital in 1974, the hospital had never had a major improvement, renovation, or upgrade. As a result, EUHS applied for a certificate of need in March 2016 in order to proceed with improvements and

---

[2] Emory Healthcare purchased the remaining interest in the hospital from Emory-Adventist, Inc. On the same date, Emory Healthcare quitclaimed its interest to Emory University.

renovations totaling approximately $33.8 million.[3] Wellstar objected to EUHS'

application, arguing that the application "seeks to develop a new hospital" rather than

reopening and renovating the former Emory-Adventist Hospital. Although it listed

eight reasons for its objection to EUHS' application, Wellstar's primary argument

was that "[t]he CON authority of the former Emory-Adventist Hospital has lapsed."

As a result, Wellstar asserted that EUHS never obtained CON authority to offer

hospital services and that EUHS' application "must be reviewed as a new hospital

requiring new CON approval."[4]

In its evaluation of EUHS' application, the DCH noted that EUHS filed its

application "to renovate and upgrade its current hospital facility." In addition, the

DCH determined that

---

[3] The proposed improvements include adding two operating rooms, increasing the size of the existing operating rooms, reconfiguring and renovating the first floor to permit "efficient and safe patient flow throughout the facility," renovating the second and third floors, improving the IT infrastructure, and other renovations to bring the hospital up to current and accepted standards.

[4] Specifcially, Wellstar argued that: (1) Emory Healthcare's failure to seek approval of its purchase of Emory-Adventist under the Hospital Acquisition Act (OCGA § 31-7-400 et seq.) rendered the transaction null and void and invalidated the existing CON; (2) the lack of a valid license to operate a hospital meant Emory-Adventist's CON could not be transferred to EUHS; and (3) even if Emory-Adventist's CON transferred to EUHS, EUHS' failure to offer inpatient services within 12 months of Emory-Adventist's closure caused the CON to lapse.

4

EUHS, formerly known as Emory Adventist Hospital (EAH), closed on October 31, 2014 and re-opened October 20, 2015, according to Department records. In April 2015, Emory University acquired full title to EAH, and renamed it EUHS. As such, EUHS maintains an active CON status.[5]

Following its review, the DCH granted EUHS' application and issued EUHS a CON for the proposed improvements and renovations.

Wellstar appealed the DCH's award to the CON Appeal Panel. In a motion for summary adjudication, Wellstar argued, in part, that the DCH erred in awarding a CON to EUHS "to 'renovate and upgrade' the former Emory-Adventist Hospital . . . facility despite the fact that [EUHS] has no CON authorization to operate a hospital there." As a result, Wellstar asserted that EUHS "must obtain new CON authority to operate a hospital[,]" which applies more extensive and rigorous guidelines.[6] EUHS replied that the DCH has the sole authority to determine whether an applicant maintained a proper CON and, as a result, EUHS filed its own motion for summary

---

[5] Further supporting the panel hearing officer's conclusion was an email from the DCH commissioner confirming that the buyer of a closed hospital "steps into [the] shoes of [the] seller's authorizations. . . ."

[6] Wellstar presented the same substantive arguments to the CON Appeal Panel that it raised in its objection to the DCH's initial decision. See n. 4, supra.

determination seeking to exclude any evidence concerning the validity of EUHS' CON.

The panel hearing officer first noted that Wellstar raised "[its] arguments in the wrong forum." In fact, the panel hearing officer found that "[i]t is not the function of the CON Appeal Panel to consider questions of CON and licensure status. . . ." The panel hearing officer observed that the Attorney General's Office had the sole authority to oversee Emory Healthcare's purchase of Emory-Adventist under the Hospital Acquisition Act (OCGA § 31-7-400 *et seq*.) and that the DCH had the sole authority to ascertain the validity of EUHS' CON to operate a health care facility.[7] See OCGA § 31-6-21. As a result, the panel hearing officer granted EUHS' motion to exclude "Wellstar's arguments respecting CON status, Attorney General Review, and licensure status from the scope of the hearing in that the Hearing Officer does not have the authority to decide these questions."

Following an evidentiary hearing, the panel hearing officer affirmed the DCH's decision granting EUHS' application and issuing the CON.[8] Wellstar objected to the

_____

[7] After its review, the Attorney General's Office determined that the transaction was not subject to the Hospital Acquisition Act.

[8] Relevant to this appeal, the panel hearing officer found that, despite Wellstar's argument that the DCH "should have applied the service-specific short-

6

panel hearing officer's decision and appealed the decision to the DCH commissioner, who affirmed the panel hearing officer's judgment.[9]

Wellstar then petitioned for judicial review of the commissioner's decision in the Superior Court of Cobb County. The superior court denied judicial review of the Commissioner's decision,[10] and we granted Wellstar's application for discretionary appeal. This appeal followed.

1. First, Wellstar contends that the CON Appeal Panel hearing officer erroneously concluded that he "lacked authority to independently decide if [EUHS] is a CON-authorized hospital." For the following reasons, we find no error.

---

stay acute-care hospital rules" to EUHS' CON application, "EUHS has a valid hospital permit, has CON authorization from the [DCH], and is not seeking to add beds to the hospital." (Footnote omitted.) As a result, the panel hearing officer determined that "the applicable review considerations for [EUHS' CON application], which includes an existing facility applying for a renovation CON, are the General Review Considerations. . . ." See OCGA § 31-6-42 (a); Ga. Comp. R & Regs. r. 111-2-2-.09 (1).

[9] The decision by the DCH commissioner "shall be the final department decision for purposes of Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act.'" OCGA § 31-6-44 (m).

[10] Of note, the superior court found that "under the controlling statutes, the jurisdiction to determine whether EUHS has validly maintained the former Emory Adventist Hospital's CON authority is squarely vested in the [DCH]. The [DCH] has said that EUHS maintains an active CON status. . . . The CON Appeal Panel does not have the authority to reverse the [DCH] on this issue."

7

(a) *Certificate of Need Requirement.*

Under Georgia law, "any new institutional health service [is] required to obtain a certificate of need. . . ." OCGA § 31-6-40 (a). "The CON program, which is administered by [the] DCH, establishes a system of mandatory review requiring that, before new institutional health services and facilities can be developed, the developer must apply for and receive a CON from the DCH. OCGA §§ 31-6-1; 31-6-40 (a), (b)." (Citation and punctuation omitted.) *Kennestone Hosp. v. Dept. of Community Health*, 346 Ga. App. 70 (815 SE2d 266) (2018).

> The legislature cedes this authority to the [DCH] because the public is better served by having experts in the complexities of health care planning make these decisions. The issues are complicated, and the applicable laws, rules, regulations, and precedents require much study, especially for a decision-maker who is not already familiar with them.

*Dept. of Community Health v. Gwinnett County Hosp. Sys.*, 262 Ga. App. 879, 881-882 (586 SE2d 762) (2003). Pursuant to OCGA § 31-6-42 (a), the DCH "shall issue a certificate of need to each applicant whose application is consistent with [the considerations set forth in OCGA § 31-6-42] and such rules deemed applicable to a project." To that end, "[t]he DCH reviews CON applications and issues decisions granting or denying a CON under statutory considerations in OCGA § 31-6-42 and

8

under general and specific review considerations in rules and regulations promulgated by the DCH as set forth in Ga. Comp. R. & Regs. [r.] 111-2-1-.01 and 111-2-2-.01 through 111-2-2-.43." *ASMC, LLC v. Northside Hosp., Inc.*, 344 Ga. App. 576, 577 (810 SE2d 663) (2018).

Pertinent to this case, a certificate of need is required for: "(1) [t]he construction, development, or other establishment of a new health care facility; [and] (2) [a]ny expenditure by or on behalf of a health care facility in excess of $2.5 million which, under generally accepted accounting principles consistently applied, is a capital expenditure. . . ." OCGA §§ 31-6-40 (a) (1), (2). A CON application for a capital expenditure is reviewed only under the DCH's general review considerations, see OCGA § 31-6-42 (a) and Ga. Comp. R. & Regs. r. 111-2-2-.09 (1),[11] while an application for construction or development of a "new health care facility" is reviewed under both general and service-specific requirements and review considerations. See Ga. Comp. R. & Regs. r. 111-2-2-.11 (1) (a) (1), 111-2-2-.20 (1) (a), (3). Accord *Dept. of Community Health v. Northside Hosp., Inc.*, 295 Ga. 446,

---

[11] OCGA § 31-6-42 (a) contains a listing of 17 factors which the DCH must consider when reviewing a CON application. The considerations listed in Ga. Comp. R. & Regs. r. 111-2-2-.09 (1) (a) - (q) offer more detail than the considerations codified at OCGA § 31-6-42 (a), but are otherwise identical.

446-447, n. 4 (761 SE2d 74) (2014) ("more stringent service-specific review considerations" apply to applications for new CON for "ambulatory surgery services"; if the additional services are "part of a hospital" and do not increase the number of ambulatory operating rooms, however, only general considerations need be reviewed) (citing Ga. Comp. R. & Regs. r. 111-2-2-.40 (1) (a) and (d)).

(b) *Scope of Review of the DCH's Certificate of Need Decision.*

Following the DCH's initial decision granting or denying an application for a new CON,

> [a]ny applicant for a project [or] any competing health care facility that has notified the [DCH] prior to its decision that such facility is opposed to the application before the [DCH] . . . who is aggrieved by a decision of the [DCH] shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing. . . .

OCGA § 31-6-44 (d). The CON Appeal Panel hearing officer's role is defined in OCGA § 31-6-44 (f), which provides, in relevant part:

> The issue for the decision by the hearing officer shall be whether, and the hearing officer shall order the issuance of a certificate of need if, in the hearing officer's judgment, the application is consistent with the considerations as set forth in Code Section 31-6-42 and the [DCH]'s

10

rules, as the hearing officer deems such considerations and rules applicable to the review of the project.[12]

See also *Dept. of Community Health v. Satilla Health Servs., Inc.*, 266 Ga. App. 880, 884 (1) (c) (598 SE2d 514) (2004). OCGA § 31-6-44 (f) (1) further provides that the panel hearing officer may consider "whether the [DCH] committed prejudicial procedural error in its consideration of the application. . . ."[13]

Moreover, the DCH also mandated that certain issues "shall *not* be considered at an initial administrative appeal hearing and are immaterial to the hearing[,]" including "the correctness . . . of the considerations, rules, or standards by which the proposed project was reviewed by the [DCH]" and "the determination of whether a proposed project is subject to review under OCGA § 31-6-1 *et seq*. and the [DCH]'s Rules." (Emphasis supplied.) Ga. Comp. R. & Regs. r. 274-1-.09 (2) (a), (b). "The appointed hearing officer conducts a full evidentiary hearing, OCGA § 31-6-44 (e), and the appeal hearing conducted by the appeal panel hearing officer shall be a de novo review of the decision of the [DCH]. OCGA § 31-6-44 (f)." (Punctuation

---

[12] Ga. Comp. R. & Regs. r. 274-1-.09 (1) (a) contains an identical provision.

[13] See also Ga. Comp. R. & Regs. r. 274-1-.09 (1) (b) (same).

omitted.) *Kennestone Hosp.*, supra, 346 Ga. App. at 72, n. 5.; see also Ga. Comp. R. & Regs. r. 274-1-.09 (3).

Thereafter, an aggrieved party may petition the DCH commissioner for review of the panel hearing officer's decision. See OCGA § 31-6-44 (i), (k). Finally, a party may seek judicial review of the DCH commissioner's decision in superior court.[14] See OCGA §§ 31-6-44.1, 50-13-19 (a), (b).

(c) *Review of EUHS' Application for a Certificate of Need*.

Here, the DCH found that EUHS applied for a CON "to renovate and upgrade its current hospital facility." As a result, the DCH reviewed EUHS' application "according to the relevant Certificate of Need rules outlined in the General Review Considerations." See OCGA § 31-6-40 (a) (2); Ga. Comp. R. & Regs. r. 111-2-2-.09.

(i) Generally, our standard of review requires that we determine "whether 'substantial evidence' supports the [DCH]'s findings of fact, and whether the

---

[14] A superior court "may reverse or modify the final decision only if substantial rights of the appellant have been prejudiced because the procedures followed by the [DCH], the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are: (1) [i]n violation of constitutional or statutory provisions; (2) [i]n excess of the statutory authority of the [DCH]; (3) [m]ade upon unlawful procedures; (4) [a]ffected by other error of law; (5) [n]ot supported by substantial evidence . . .; or (6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 31-6-44.1 (a).

conclusions of law drawn from those findings of fact are sound." (Citation omitted.) *Palmyra Park Hosp. v. Phoebe Sumter Med. Center*, 310 Ga. App. 487, 488 (714 SE2d 71) (2011). In this case, the parties do not dispute that, to the extent EUHS' application is reviewed as an application for a new CON for a capital expenditure, the DCH's decision is supported by the panel hearing officer's findings of fact and that its conclusions of law were sound. Because there is no argument that the DCH's decision to issue EUHS a new CON for a capital expenditure was not supported by the evidence or was legally unsound, we affirm the superior court's denial of Wellstar's petition for judicial review.

(ii) Nevertheless, in what it describes as an "outcome determinative" issue of its appeal from the DCH commissioner's order affirming the panel hearing officer's determination of the scope of review, Wellstar contends that the DCH's initial determination of EUHS' existing CON status was erroneous and should have been reviewed by the panel hearing officer. However, Wellstar's argument is not proper within the limited framework of the CON Appeal Panel. Accordingly, this provides no basis for reversal and Wellstar must avail itself of other remedies.

To resolve this issue, we turn first to the governing statutes and agency rules and regulations. When examining statutory provisions,

we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. Thus, a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation.

(Citations and punctuation omitted.) *Lakeview Behavioral Health Sys. v. UHS Peachford, LP*, 321 Ga. App. 820, 822 (1) (743 SE2d 492) (2013). Similarly, "[i]n construing agency regulations, we employ the basic rules of statutory construction and look to the plain meaning of the regulation to determine its meaning." (Citation omitted.) *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 292 (2) (a) (630 SE2d 878) (2006). Accordingly,

[w]hen an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch. And in construing administrative rules, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the rule.

(Citation and punctuation omitted.) *ASMC*, supra, 344 Ga. App. at 582.

14

In short, we "must defer to the [DCH]'s decisions regarding policy, as well as to the [DCH]'s interpretation and enforcement of its own rules."[15] *Satilla Health Servs.*, supra, 266 Ga. App. at 887 (1) (c); see also *Walker*, supra, 279 Ga. App. at 292 (2) (a). This is so because

> [a]gencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary. Review overbroad in scope would have the effect of substituting the judgment of a judge or jury for that of the agency, thereby nullifying the benefits of legislative delegation to a specialized body.

*Bentley v. Chastain*, 242 Ga. 348, 350-351 (1) (249 SE2d 38) (1978). In the context of the DCH,

---

[15] Nothing in this opinion should be read to suggest that our history of agency deference is wholly without boundaries. To the contrary, agency deference is naturally limited to the authority granted the agency by the General Assembly and must be applied in a manner consistent with the Georgia constitution. Here, for the reasons explained infra, we simply hold that the DCH decision on an application for a new CON is entitled to deference because it falls within the DCH's exclusive authority.

[t]he administration of the CON program requires a particularly high level of expertise and specialization. The DCH rules promulgated to administer the program are detailed and lengthy. See, e.g., Ga. Comp. R. & Regs. r. 111-2-2-.07, which describes the review procedures for CON applications. Both the hospital seeking a CON and the hospitals opposing it gather and organize vast amounts of data, expert testimony, and other evidence which are presented to the agency staff, which then interprets and synthesizes the evidence and applies it to the agency rules. See OCGA § 31-6-43. The initial staff decision must be issued within a relatively short period of time, at most 150 days after the CON application is complete. OCGA § 31-6-43 (d), (i).

Further administrative review is also highly specialized. The hearing officer who reviews the initial DCH staff decision is one of five members of the CON Panel, all of whom are appointed by the Governor and are attorneys "who are familiar with the health care industry but who do not have a financial interest in or represent or have any compensation arrangement with any health care facility." OCGA § 31-6-44 (a), (b).

*Palmyra Park Hosp., Inc.*, supra, 310 Ga. App. at 491-492 (1). Ultimately, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Satilla Health Servs.*, supra, 266 Ga. App. at 885 (1) (c).

16

Wellstar's argument that the panel hearing officer should "independently decide" whether EUHS maintained an active CON status to operate a health care facility is flawed for two reasons. First, the plain language of OCGA § 31-6-44 precludes the panel hearing officer from considering a challenge to a CON applicant's existing CON status. Second, the exclusive authority to determine whether a health care facility maintains an active CON has been legislatively relegated to other divisions of the DCH.

(A) *Plain Language of OCGA § 31-6-44.*

On appeal from the DCH's decision on a CON application, the scope of the panel hearing officer's review is limited to "whether, . . . in the hearing officer's judgment, the application is consistent with the considerations as set forth in Code Section 31-6-42 and the [DCH]'s rules, as the hearing officer deems such considerations and rules applicable to the review of the project." OCGA § 31-6-44 (f); see also Ga. Com. R. & Regs. r. 274-1-.09 (same). Accordingly, the plain language of the statute mandates that the panel hearing officer may only review whether a CON application is consistent with: (1) the 17 general considerations set forth in OCGA § 31-6-42 (a); (2) the 17 general considerations set forth in Ga. Comp. R & Regs. r. 111-2-2-.09 (1) (a) - (q); and (3) any additional service-specific

17

considerations, promulgated by the DCH and listed in Ga. Comp. R. & Regs. r. 111-2-2-.11 (1), that may apply to the CON application under review.[16] In addition, Ga. Comp. R. & Regs. r. 274-1-.09 (2) (b) directs that the panel hearing officer is specifically precluded from considering "the determination of whether a proposed project is subject to review under OCGA § 31-6-1 et seq. and the [DCH]'s Rules."

In that regard, none of the considerations under either OCGA § 31-6-42 or Ga. Comp. R. & Regs. r. 111-2-2 address a health care facility's existing CON status. Rather, the panel hearing officer simply reviews whether the CON application at issue, which has been reviewed and either granted or denied by the DCH, is consistent with these enumerated considerations. See OCGA § 31-6-44 (f). The General Assembly, in enacting OCGA § 31-6-44, did not endow the panel hearing officer with any other authority. Accordingly, under the plain language of both OCGA § 31-6-42 and Ga. Comp. R. & Reg. 274-1-.09 (1) (a) and (b), a CON Appeal Panel hearing officer does not have the authority to examine the DCH's initial

[16] Here, the words "consideration" and "rule" are terms of art which specifically refer to the provisions of OCGA § 31-6-42 and Ga. Comp. R. & Regs. r. 111-2-2-.09 and 111-2-2-.11, respectively. See generally *AgSouth Farm Credit, ACA v. Gowen Timber Co.*, 336 Ga. App. 581, 589 (2) (b) (i) (784 SE2d 913) (2016) ("if a statute is plain and unambiguous, its words (except for terms of art or those with a particular meaning in connection with a specific trade or subject matter) must be assigned their common and ordinary meaning") (citation omitted).

determination of a health care facility's existing CON status. See, e.g., *Lakeview*, supra, 321 Ga. App. at 822 (1); *Walker*, supra, 279 Ga. App. at 292 (2) (a).

Wellstar relies principally on *Floyd County Bd. of Commrs v. Floyd County Merit Sys. Bd.* for the proposition that "incidental powers reasonably necessary to carry out . . . express powers are included by implication." 246 Ga. 44, 45 (1) (268 SE2d 651) (1980). In *Floyd County*, our Supreme Court noted that an act creating the Merit System Board placed "broad responsibilities on that body in regard to the hiring, firing, promotion, etc., of county employees coming under its provisions." Id. at 45 (2). As a result, the Court observed that "[i]t would strain the mind to think that such a body could function without personnel." Id. Accordingly, the Court concluded that the Merit System Board, rather than the county board of commissioners, "had implied powers to hire and discharge employees in keeping with its annual budget, the same being reasonably necessary to execute the powers conferred." Id. In this case, there is no such need to search for incidental powers because the CON Appeal Panel's express powers, as described above, fully define its limited authority. See OCGA § 31-6-44; Ga. Comp. R. & Regs. r. 274-1-.09. As a result, Wellstar's argument is unavailing.

Nor is Wellstar rescued by provisions stating that the panel hearing officer conducts "a de novo review of the decision of the [DCH]." OCGA § 31-6-44 (f); see also Ga. Comp. R. & Regs. r. 274-1-.09 (3). To the contrary, de novo is a standard of review, rather than a description of what is reviewable pursuant to a regulatory and statutory review scheme. See, e.g., *Wash. State Dept. of Corrections v. Wash. State Personnel Appeals Bd.*, 967 P2d 6, 9 (C) (Wash. App. 1998) ("We review an administrative agency action de novo. But *the scope of review is limited. . . .*") (emphasis supplied; citations omitted). Stated differently, the CON Appeal Panel hearing officer conducts a de novo review only of the considerations identified in OCGA § 31-6-42 (a) and Ga. Comp. R & Regs. r. 111-2-2-.09 (1) (a) - (q), and any additional service-specific considerations listed in Ga. Comp. R. & Regs. r. 111-2-2-.11 (1), that may apply, rather than a wholesale review of the DCH's entire decision-making process.

In this regard, Wellstar's reliance upon *Longleaf Energy Assocs., LLC v. Friends of the Chattahoochee, Inc.* for an expansive definition of "de novo" is misplaced. 298 Ga. App. 753, 768 (7) (681 SE2d 203) (2009). In *Longleaf*, we quoted an administrative rule of the Environmental Protection Division of the Department of Natural Resources providing that an administrative review hearing "'shall be de

20

novo in nature *and the evidence on the issues in any hearing is not limited to the evidence presented to or considered by the Referring Agency prior to its decision.*' Ga. Comp. R. & Regs. r. 616-1-2-.21 (1), (3)." (Emphasis supplied; punctuation omitted.) Id. In contrast to the rule at issue in *Longleaf*, the rules and regulations governing the CON Appeal Panel do not authorize such a broad scope of review. See Ga. Comp. R. & Regs. r. 274-1-.09 (2) (identifying issues that "shall not be considered at an initial administrative appeal hearing and are immaterial to the hearing"), (3) ("The appeal hearing conducted by the Appeal Panel hearing officer shall be a de novo review of the decision of the [DCH]."). Accordingly, *Longleaf* is inapposite.

(B) *Companion Statutes to OCGA § 31-6-44.*

Our conclusion is buttressed by other statutes which must be read in pari materi with OCGA § 31-6-44. See generally *Jordan v. Marriott Intl., Inc.*, 346 Ga. App. 706, 712 (1) (b) (816 SE2d 822) (2018) (three coordinating statutes "must be read in pari materia, which means simply that they must be harmonized, and may not be read in a vacuum") (citation and punctuation omitted).

The General Assembly granted the DCH exclusive authority to administer the CON program. See OCGA § 31-6-21 (a). To that end, the DCH has the authority to,

21

among other things: (1) "adopt, promulgate, and implement rules and regulations sufficient to administer . . . the certificate of need program;" (2) "define, by rule, the form, content, schedules, and procedure for submission of applications for certificates of need;" and (3) "grant, deny, or revoke a certificate of need as applied for or amended[.]" OCGA § 31-6-21 (b) (4), (5), and (10).

Similarly, Article 3 of Title 31, Chapter 6 provides the DCH with authority to "to revoke a certificate of need, in whole or in part" for a variety of reasons (OCGA § 31-6-45 (a)), fine a health care facility for violations of the certificate of need requirement (OCGA § 31-6-45 (c)), file an action for injunctive relief to enforce the requirements of the CON program (OCGA § 31-6-45 (d)), and conduct investigations into alleged violation of the CON program (OCGA § 31-6-45 (e)). In addition, the DCH may deny a license to operate to "[a]ny health care facility offering a new institutional health service without having obtained a certificate of need and which has not been previously licensed as a health care facility. . . ." OCGA § 31-6-45 (b). With the exception of the DCH's decision to grant or deny an application for a CON, see OCGA § 31-6-44 (a), none of these actions by DCH would be reviewable by the

22

CON Appeal Panel.[17] Therefore, a review of these statutes confirms that the sole authority to review a health care facility's existing CON status rests with the DCH.[18]

In sum, we conclude that Wellstar's argument — that the CON Appeal Panel hearing officer may independently review the existing CON status of a health care facility in an appeal from a DCH decision on the facility's application for a new CON — is foreclosed by the plain language of OCGA § 31-6-44 and Ga. Comp. R. & Regs. r. 274-1-.09. Rather, issues concerning a facility's existing CON status must be addressed by the remedies codified in OCGA § 31-6-45. Were we to accept Wellstar's expansive view of the panel hearing officer's role to allow review of a limitless universe of issues not related to the CON application, we would necessarily bestow authority upon the panel hearing officer not supplied by the General Assembly. This, we will not do. We therefore affirm the superior court's denial of Wellstar's petition for judicial review.

---

[17] See OCGA § 31-6-44 (a) ("The purpose of the appeal panel shall be to serve as a panel of independent hearing officers to review the [DCH]'s initial decision to grant or deny a certificate of need application.").

[18] Similarly, issues concerning whether a hospital transaction must be reviewed pursuant to the Hospital Acquisition Act (OCGA § 31-7-400 *et seq*.) are subject to the provisions of that statute, which is administered exclusively by the Attorney General's Office. See OCGA § 31-7-401 *et seq*.

23

2. In its second enumeration of error, Wellstar argues that the panel hearing officer's decision was "made upon unlawful procedures" and that the decision violated Wellstar's due process rights under the United States and Georgia constitutions. Pretermitting whether Wellstar properly raised this issue before the CON Appeal Panel, a review of the decisions by the panel hearing officer and the DCH commissioner reveals that neither official ruled on that distinct issue. "Constitutional issues must be raised at the earliest opportunity in the trial court *and ruled upon* to be preserved." (Citations omitted.) *Singleton v. Dept. of Human Resources*, 263 Ga. App. 653, 654 (1) (a) (588 SE2d 757) (2003). As a result, "unless ruled upon by the trial court, constitutional issues cannot be reviewed on appeal, because the appellate court lacks jurisdiction to consider a constitutional issue not ruled upon by the trial court." (Citation omitted.) Id. See also *John Hardy Group, Inc. v. Cayo Largo Hotel Assoc.*, 286 Ga. App. 588, 589 (1) (649 SE2d 826) (2007) ("A constitutional issue is waived by the failure of the trial court to rule upon it.") (citation and punctuation omitted). Accordingly, this enumeration presents nothing for our review.

In conclusion, neither OCGA § 31-6-44 nor Ga. Comp. R. & Regs. r. 274-1-.09 provide the CON Appeal Panel with authority to review the existing CON status of

24

a health care facility in an appeal from the DCH's decision on an application for a new certificate of need. Because the CON Appeal Panel hearing officer correctly concluded that "[i]t is not the function of the CON Appeal Panel to consider questions of CON and licensure status," and in the absence of argument that the panel hearing officer's findings of fact were unsupported or the officer's conclusions of law were unsound, we affirm the superior court's judgment denying Wellstar's petition for judicial review.

*Judgment affirmed. Gobeil and Coomer, JJ., concur.*

25