A99A1146. SPARKS v. HOSPITAL AUTHORITY OF THE CITY OF BREMEN & COUNTY OF HARALSON.
(526 SE2d 593)

POPE, Presiding Judge.

This appeal presents questions of first impression concerning the construction of the Hospital Acquisition Act, OCGA §§ 31-7-400 through 31-7-412. For the following reasons, we conclude that the superior court erroneously interpreted the Act, and we reverse the court's dismissal of Sparks' complaint.

The Hospital Authority of the City of Bremen and County of Haralson, which owned and operated Higgins General Hospital in Bremen, negotiated an agreement with Tanner Medical Center, transferring the control and operation of the hospital from the Authority to Tanner. Under the agreement, Tanner would lease most of the real property of the hospital, purchase most of the personal property, and operate the hospital. This transaction was subject to the Act, under which no purchase or lease of 50 percent or more of the assets of a nonprofit hospital may take place without notifying the Attorney General of Georgia at least 90 days before "consummation" of the transaction. OCGA §§ 31-7-400 (2); 31-7-401.

Amos Sparks, the sole commissioner of Haralson County, objected to the transfer and filed a verified complaint in Haralson County Superior Court seeking a preliminary injunction. He also moved the court for a temporary restraining order to halt the transfer. On May 18, 1998, after the court refused to grant the restraining

order, the Authority and Tanner signed the agreement.[1] On June 9, 1998, they notified the Attorney General of the transaction. A public hearing, as required under the Act, was scheduled to be held on August 7, 1998.

On June 26, 1998, Sparks amended his complaint to seek a declaration that the lease and transfer agreement was null and void because the Authority had consummated the agreement by executing it before the disclosure and public comment period provided for under the Act. The Authority responded to the amended verified complaint and moved to dismiss it for failure to state a claim. The trial court granted the Authority's motion to dismiss the complaint, concluding that the agreement was a "proposed transaction" within the meaning of the Act and that Tanner and the Authority had not violated the Act. Sparks appealed.

1. Sparks contends that the court erred in granting the Authority's motion to dismiss because the complaint states a valid claim that the Authority violated the Act by executing the lease with Tanner before initiating the requisite public disclosure process. Sparks further argues that the purpose of the Act was frustrated because the agreement was executed before obtaining local input. We agree.

The crucial facts relevant to our inquiry are: on May 18, 1998, the Hospital Authority signed the agreement transferring the control and operation of the hospital from the Authority to Tanner. The agreement provided that it was binding on the parties, but that it would not be "consummated" until the fifth day after the issuance of the Attorney General's finding that the transaction was in the best interest of the public. In other words, the Authority and Tanner agreed to the terms and the conditions of the transaction, but agreed that it would not be effective until the Attorney General approved the agreement.

In dismissing Sparks' complaint, the superior court stated: "regardless of whether the parties submitted a preliminary agreement or an executed agreement, the transaction is not binding until the Attorney General approves it." The superior court stated that in order to facilitate the Attorney General's approval of an agreement under the Act, it was necessary that the parties submit the terms and conditions of the transaction to him. "Otherwise," the court stated, "the Attorney General would have a difficult time approving the acquisition, as he would have no basis to consider the transaction with." Accordingly, the court determined that the agreement between the parties was a "proposed transaction," and that the parties had

---

[1] The superior court entered an order denying the motion on May 28, 1998 nunc pro tunc to May 18, 1998.

complied with the Act.

The problem with the superior court's interpretation of the Act is that it allows the parties to a transaction to circumvent any meaningful public input about the transaction. And the Act clearly contemplates that before any transaction is consummated the Attorney General will hold a public hearing to provide a forum for meaningful public input about the transaction.

The Act first requires that the parties notify the Attorney General about prospective transactions. OCGA § 31-7-401 states: "[n]o acquiring entity shall engage in an acquisition without first notifying the Attorney General pursuant to this article." The section later provides that: "the parties to the transaction shall provide the Attorney General with at least 90 days' notice of the proposed transaction prior to its consummation." The following sections, OCGA §§ 31-7-402 and 31-7-403, lay out the information about the transaction which the negotiating parties must provide to the Attorney General.

With regard to the public input regarding the proposed transaction, OCGA § 31-7-406 provides:

> [t]he purpose of the public hearing shall be to ensure that the public's interest is protected when the assets of a non-profit hospital are acquired by an acquiring entity by requiring full disclosure of the purpose and terms of the transaction and *providing an opportunity for local public input.*

(Emphasis supplied.) To that end, OCGA § 31-7-404 requires the Attorney General to publish a notice of the proposed transaction in a general circulation newspaper. The section further requires that this notice state the specifics of the public hearing and "the means by which a person may submit written comments about the proposed transaction to the Attorney General." OCGA § 31-7-405 then outlines the mechanics of the hearing — subsection (a) states that at the hearing the "Attorney General shall provide an opportunity for those persons in favor of the transaction, those persons opposed to the transaction, and other interested persons to be heard." This section also provides that "the Attorney General shall also receive written comments regarding the transaction from any interested person."

In this case, contrary to the superior court's conclusion, the Authority and Tanner effectively consummated the transaction between themselves before any public hearing was held. Regardless of subsequent input which may have been provided through the public hearing process, the Authority was contractually bound to transfer control of the property to Tanner. The parties' actions here contravened the Act's purpose — to provide community involvement in the transaction. Accordingly, the superior court erred in dismissing

Sparks' complaint for failure to state a claim.

2. Sparks also argues that the Act does not vest the Attorney General with the power to approve or reject a transaction. We conclude that although in this case the parties failed to comply with the terms of the Act by failing to allow for meaningful local input, after a meaningful public hearing has been properly held on a proposed agreement, the Attorney General *is* authorized to determine whether a transaction is in the public interest and, thus, to approve or reject it.

Although the Act does not use the word "approve" or "deny" in describing the Attorney General's duties, an overview of the provisions shows that his approval that the transaction is in the public interest is the final piece of a properly executed agreement. Under the Act, the Attorney General is involved in the hospital acquisition process from beginning to end. OCGA §§ 31-7-401 through 31-7-404 address the Attorney General's role in overseeing the notice aspects of the proposed transaction. OCGA § 31-7-405 requires the Attorney General to conduct the public hearing on the proposed transaction and states that certain witnesses shall be subject to questioning by him. OCGA § 31-7-407 provides that the Attorney General shall have the authority to ensure compliance with all notices, may institute proceedings to enforce such compliance, and shall issue a report of findings regarding the public hearing. OCGA § 31-7-407.1 charges the Attorney General with issuing a report of findings addressing the 13 issues outlined in OCGA § 31-7-406 and provides that the time period for issuing the report may be extended "if the Attorney General finds there has been a failure by the entities involved in the transaction" to comply with the requisite disclosures. Under OCGA § 31-7-408, a hospital permit may not be issued or renewed and, in fact, may be revoked if a disposition or acquisition takes place without the required notice being provided to the Attorney General. OCGA § 31-7-410 explicitly states that no provision of the statute "shall derogate from the common law or statutory authority of the Attorney General." OCGA § 31-7-411 states that the Attorney General shall have the same power to investigate as under OCGA § 45-15-17 (which authorizes the Attorney General to conduct investigations into, among other things, the affairs of the state and any department of the state). The final section, OCGA § 31-7-412, authorizes the Attorney General to instigate proceedings for unlawful dispositions or acquisitions.

Although the legislature has not explicitly stated that under the Act the Attorney General must approve that a proposed transaction is in the public interest, the statutory scheme clearly contemplates this role. The cumulative effect of these provisions is that if the Attorney General finds the disclosures inadequate or finds any of the

factors that must be considered unfavorable, the report has the effect of disapproving the transaction. Given the broad powers in the entire process which the Attorney General has, it appears that the legislature simply failed to use the words "approve" or "deny" in defining his duty.

We find no merit in Sparks' argument that if the General Assembly had intended for the Attorney General to determine whether the transaction was in the public interest or approve or disapprove of transactions, it would have framed the Act in compliance with the Georgia Administrative Procedure Act, OCGA §§ 50-13-1 through 50-13-44, or provided other procedural safeguards for due process.

*Judgment reversed. Eldridge, J., concurs. Smith, J., concurs specially.*

SMITH, Judge, concurring specially.

I agree with the majority that the trial court's ruling must be reversed. I write specially because, in my view, the majority in reaching its conclusion reads much into the Act that is not actually there.

I find it easy to understand why the parties and the trial court reached the conclusion that the agreement had not been "consummated" prior to submitting it to the Attorney General and that the Act had been followed. As the trial court noted, the Act appears to contemplate submitting a completely worked-out agreement. The parties to this transaction signed the agreement with a provision that made it binding upon themselves five days after the Attorney General issued his findings, "if such findings disclose that the transaction contemplated hereby is in the public interest." It is apparent that they apparently believed, as the trial court did, that the Act gives the Attorney General the power and authority to "disapprove" the transaction based upon comment and input from the affected public.

Unlike the majority, I find nothing in the Act giving the Attorney General such broad authority, and I am troubled by this omission. Faced with this omission, the majority chooses to fill in the gaps in the statute. But as written, the Act is a disclosure statute, akin to a "sunshine law." It actually gives the Attorney General very limited power to nullify a transaction within the purview of the Act. It expressly provides that such a transaction is null and void only if the parties do not comply with "the notice, disclosure, and certification requirements" of the Act. OCGA § 31-7-412 (a).

Under these provisions, the parties must notify the Attorney General of the impending transaction, make numerous disclosures, including the financial interests of the principals, and certify that the transaction is authorized, the terms are reasonable, and the transferor has received fair market value in the transfer. The certification

must also include a statement that "the transaction will not adversely affect the availability or accessibility of health care services in the county." OCGA § 31-7-403 (b) (8). Apart from a rather mechanical review, ensuring that all disclosures and certifications are made, the primary responsibility of the Attorney General under the Act appears to be to facilitate public awareness of the proposed transaction.

But elementary principles of statutory construction dictate that we cannot interpret the Act's provisions regarding the public hearing to be completely meaningless. Given the Attorney General's limited power, the purpose of the public hearing necessarily must be to indicate to the parties the public's perception of the transaction and to persuade the parties to bend, in some way, to the public's will. And in my view, the parties in this case frustrated the purpose of at least a portion of the Act by agreeing, before hearing public comment, that the provisions of the agreement would be binding upon them once the Attorney General issued his report. I therefore must agree with the majority that the trial court erred in finding that Sparks had not stated a claim upon which relief could be granted.

I am more troubled than the majority, however, about the absence of any provision in the Act stating that *anyone* — including the Attorney General — has the power to disapprove a proposed transaction *on its merits*. Under the Act as written, I see nothing to prevent the parties from choosing to ignore decisively adverse public opinion, should they choose to do so. Because of this omission, it is clear to me that in this case, for instance, even if the parties had followed the letter of the statute, as construed by the majority, they could have frustrated the Act's purpose by choosing to ignore adverse public comment and consummating the transaction once the Attorney General issued a report. This is true because the statute in fact provides no mechanism for ensuring that the public interest is protected, other than ensuring that the parties meet minimal notice, disclosure, and certification requirements.

In this case, the Attorney General held the public hearing, as required by the statute, and issued the required report. The Attorney General determined that the parties had met all the notice, disclosure, and certification requirements of the Act. In my view, the statute in its present form does not empower him to do anything more. I believe it would be useful and important to the people of Georgia to have a statute that provides in some way for "approval" or "disapproval" of a public hospital transfer based upon comment and input from the affected public. I do not find such a provision in the Act, however, and any such change is within the province of the General Assembly, not the courts.

DECIDED DECEMBER 3, 1999 —
RECONSIDERATIONS DENIED DECEMBER 15, 1999 —

*Murphy, Murphy & Garner, Thomas B. Murphy, Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., Leo E. Reichert*, for appellant.

*Gambrell & Stolz, Seaton D. Purdom, Bryan M. Cavan, Christopher R. Stovall*, for appellee.