**SECOND DIVISION
MILLER, P. J.,
DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 3, 2020**

# In the Court of Appeals of Georgia

A20A1000. COBB HOSPITAL, INC. et al. v. DO-039 EMORY-ADVENTIST, INC. et al.

DOYLE, Presiding Judge.

The instant appeal arises from a declaratory judgment action filed in superior court by Cobb Hospital, Inc., d/b/a WellStar Cobb Hospital, Kennestone Hospital, Inc., d/b/a WellStar Kennestone Hospital, and WellStar Health System, Inc., (collectively, "WellStar") seeking to have the acquisition of Emory-Adventist Hospital by Emory Healthcare, Inc.,[1] declared null and void for violation of the Hospital Acquisition Act ("HAA"), OCGA § 31-7-400 et seq., and for an injunction to prevent the operation of Emory's hospital at the location of the former Emory-Adventist Hospital. The parties filed cross-motions for summary judgment, and the

---

[1] Wellstar also named as defendants Emory-Adventist, Inc., and Emory University, Inc., d/b/a Emory University Hospital Smyrna (collectively, "Emory").

trial court granted Emory's motion, denying Wellstar's requests for relief. Wellstar appeals, arguing that the trial court erred by finding that Emory's acquisition of Emory-Adventist Hospital did not violate the HAA. For the reasons that follow, we affirm.

As explained in an earlier opinion of this Court,

Smyrna Hospital, Inc., an 88-bed community hospital, opened on South Cobb Drive in Smyrna in 1974. Adventist Health System acquired the hospital in 1976. In 1995, Emory Healthcare entered a joint venture agreement with Adventist Health System and obtained a 35 percent share ownership in the hospital; thereafter, the hospital was renamed Emory-Adventist Hospital. Due to declining revenues, Emory-Adventist ceased operations on October 31, 2014. In April 2015, Emory University acquired sole ownership of the hospital, which was renamed Emory University Hospital Smyrna and reopened on October 20, 2015.[2]

When Emory-Adventist ceased operations on October 31, 2014, it surrendered its permit to the Department of Community Health ("DCH"). Rather than complete revocation of its permit, Emory-Adventist advised DCH that it would temporarily close and requested that the permit be placed on "inactive" status. Prior to Emory-

---

[2] *Cobb Hosp., Inc. v. Dept. of Community Health*, 349 Ga. App. 452, 453-454 (825 SE2d 886) (2019), reversed in part by *Cobb Hosp. v. Dept. of Community Health*, 307 Ga. 578 (837 SE2d 371) (2019).

Adventist's closure, its representatives discussed acquisition of the hospital by Emory, as well as whether Emory could reopen the facility within twelve months of closure if Emory-Adventist placed the permit on inactive status.[3] Emory also discussed this issue with the director of DCH.

Thereafter, on January 14, 2015, Emory entered into a purchase and sale agreement with Emory-Adventist for the hospital building and two medical office buildings. On April 1, 2015, Emory representatives discussed the purchase with the Attorney General's office, and the Attorney General opined that review under the HAA was not necessary. Based on the Attorney General's representations to Emory, no written disclosure under the HAA was filed.

In May 2015, after Emory closed on the transaction, it met with the Attorney General's office again, this time to discuss a proposed reopening of the old Emory-Adventist facility and to confirm that the HAA was not implicated. In March 2016,

---

[3] There is some evidence in the record that prior to closing, Emory-Adventist was in discussions for a buyout with Wellstar, which had dissolved by March 2014. At that point, discussions between Emory and Emory-Adventist had begun, which all occurred about a year before closing on the purchase and sale agreement at issue.

DCH granted Emory a new certificate of need for proposed improvements and renovations at former Emory-Adventist to open an orthopedic surgery center.[4]

After contacting the Attorney General arguing that Emory's acquisition of Emory-Adventist violated the HAA, Wellstar filed this suit seeking declaratory and injunctive relief. The trial court granted summary judgment, finding that Emory-Adventist was not a hospital for purposes of the HAA. Wellstar now appeals.

> When examining statutory provisions, we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. Thus, a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. Similarly, in construing agency regulations, we employ the basic rules of statutory construction and look to the plain meaning of the regulation to determine its meaning. Accordingly, when an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch. And in construing administrative rules, the ultimate criterion is

---

[4] See generally *Cobb Hosp., Inc.*, 349 Ga. App. at 452.

4

the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the rule.[5]

1. Georgia's HAA[6] applies any time the sale, purchase, or lease, of 50 percent or more of the assets of a hospital owned, controlled, or operated by a nonprofit entity occurs. Under the Act, both the entity for sale and the acquiring entity are directed to

---

[5] (Citations and punctuation omitted.) *Cobb Hosp., Inc.*, 349 Ga. App. at 459-460 (1) (c) (ii), quoting *ASMC, LLC v. Northside Hosp.*, 344 Ga. App. 576, 582 (810 SE2d 663) (2018); *Lakeview Behavioral Health System v. UHS Peachford, LP*, 321 Ga. App. 820, 822 (1) (743 SE2d 492) (2013); *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 292 (2) (a) (630 SE2d 878) (2006).

[6] Approximately 20 years ago, members of this Court commented on the opaque piece of Code that is the HAA. See *Turpen v. Rabun County Bd. of Commrs.*, 245 Ga. App. 190, 197 (537 SE2d 435) (2000) (physical precedent only), Smith J. specially concurring ("I am concerned about the flaws, both ambiguities and omissions, in the [HAA.]"); *Sparks v. Hosp. Auth. of the City of Bremen &c.*, 241 Ga. App. 485, 489-490 (526 SE2d 593) (1999) (physical precedent only), Smith J. specially concurring. The statute is among approximately 19 passed in the United States between 1996 and 1998 after a surge of for-profit takeovers of nonprofit hospitals across the country. See Sara Collins, Bradford Gray, & Jack Hadley, *The For-Profit Conversion of Nonprofit Hospitals in the U.S. Health Care System: Eight Case Studies*, The Commonwealth Fund, (May 2001), available at http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.499.3671&rep=rep1&type=pdf. At the time, Georgia's statute was one of three in which "legislation ha[d] been passed which confirm[ed] attorney general oversight responsibility but ha[d] no provision for commensurate approval of the transaction." See ARTICLE: Assuring Competent Oversight to Hospital Conversion Transactions, 52 Baylor L. Rev. 83 fn 521 (Winter 2000).

notify the Attorney General of the proposed acquisition,[7] providing the specific information set forth in OCGA §§ 31-7-402 and 31-7-403, not only as to the financial particulars of the transaction, but also with regard to financial information of the nonprofit entity as related to the hospital assets and individual board member's financial interests or continued involvement with the acquiring entity. Moreover, the HAA directs the Attorney General to publish within ten days a notice of this proposed acquisition in the county where the nonprofit hospital is located and to notify in writing "the governing authority of such county."[8]

The HAA's public hearing

shall be to ensure that the public's interest is protected when the assets of a nonprofit hospital are acquired by an acquiring entity by requiring full disclosure of the purpose and terms of the transaction and providing an opportunity for local public input. The disposition of a nonprofit hospital to an acquiring entity shall not be in the public interest unless there has been adequate disclosure that appropriate steps have been taken to ensure that the transaction is authorized, to safeguard the value of charitable assets, and to ensure that any proceeds of the transaction are used for appropriate charitable health care purposes.[9]

---

[7] See OCGA § 31-7-401.

[8] OCGA § 31-7-404.

[9] OCGA § 31-7-406.

The HAA provides several sanctions for the entities that fail to comply with the statutory scheme, including fines,[10] and the revocation or suspension of any existing permits and/or non-renewal or non-issuance of new permits.[11] And finally, that any "disposition or acquisition of assets made in violation of the notice, disclosure, and certification requirements of this article shall be null and void[.]"[12]

2. As a threshold matter, Emory has moved to dismiss this appeal, presenting numerous arguments all of which we find unpersuasive.[13]

(a) *Improper Appellate Procedure.* Emory argues that this appeal should be dismissed because this is an agency decision, Wellstar failed to obtain an agency ruling, and (even if the Attorney General's letter determination was a decision) Wellstar failed to file the necessary discretionary appeal application.[14]

---

[10] See OCGA § 31-7-412 (a).

[11] See OCGA § 31-7-408.

[12] Id.

[13] Emory presents some of these arguments in its response brief, but because the arguments challenge the justiciability of the appeal, we treat them along with the arguments presented in the motion to dismiss.

[14] See generally OCGA § 5-6-35 (a) (1).

7

Reading the HAA as a whole, no agency determination is required in order to pursue enforcement.[15] Comparison of Georgia's HAA to nonprofit hospital acquisition acts in other states[16] shows a stark contrast between those statutory schemes in which the Attorney General is required to make an inquiry into an acquisition[17] and to make a specific decision as to whether the acquisition is appropriate,[18] and Georgia's HAA, under which it is at most implied that the Attorney

---

[15] See, e.g., *Turpen*, 245 Ga. App. at 190-192 (allowing citizen declaratory judgment suit related to a proposed acquisition).

[16] See generally ARTICLE: Assuring Competent Oversight to Hospital Conversion Transactions, 52 Baylor L. Rev. at 147-150 (V) (comparing various state's nonprofit hospital acquisition statutory schemes).

[17] See, e.g., Haw. Rev. Stat. § 323D-73 (b) ("If the [A]ttorney [G]eneral determines that a review is unnecessary or not appropriate, then none of the other provisions of this part applicable to review by the [A]ttorney [G]eneral shall apply."). Compare with OCGA § 31-7-401 ("No acquiring entity shall engage in an acquisition without first notifying the Attorney General pursuant to this article.").

[18] See, e.g., Haw. Rev. Stat. § 19-323D-75 (a) ("the [A]ttorney [G]eneral shall review and approve or disapprove the acquisition"). Compare with OCGA § 31-7-408 ("No permit to operate a hospital may be issued or renewed under this . . . without notice first having been provided to the Attorney General as required by this article."); OCGA § 31-7-412 (a) ("Any disposition or acquisition of assets made in violation of the notice, disclosure, and certification requirements of this article shall be null and void, . . .").

8

General should make a determination of whether an acquisition meets the statutory requirements.

Moreover, under the HAA, entities other than the Attorney General may seek to enforce violations of the Act. OCGA § 31-7-407 expressly states that while the Attorney General has authority to ensure compliance with the HAA "any other person with standing [may institute] judicial proceedings regarding the proposed disposition." Although we are mindful that the phrase "proposed disposition" could be read to mean that individuals other than the Attorney General are prohibited from bringing actions if an acquisition has been consummated, when read with the remainder of the statutory scheme, we find the limitation is ambiguous. This is because the broad language of OCGA § 31-7-412 (a) contemplates that violations of the requirements of the HAA result in the automatic legal status of an "acquisition" being "null and void." Thus, an acquisition if truly "null and void" is not an acquisition at all, and the literal limitation on actions in OCGA § 31-7-407 to "proposed dispositions" does not actually introduce such a limitation.

(b) *Standing*. Emory contends that Wellstar is not in the class of individuals who have standing to bring an action under the HAA under OCGA § 31-7-407 because Wellstar is not an individual who could utilize the services of the hospital.

9

We decline to impose such a limit. Wellstar operates two hospitals within the county in which Emory-Adventist also operated. As such, Wellstar was among those to whom notice should have been made by the Attorney General after receiving it from Emory,[19] and it's representatives could have participated in the public hearing.[20]

(c) *Statute of Limitation.* Emory also argues that Wellstar's suit failed to comply with the statute of limitation, which it contends is found in OCGA § 31-7-412 (a). This Code section states that "[t]he Attorney General shall institute proceedings to impose such fine [for failure to comply with the HAA] within one year of the unlawful disposition or acquisition."[21] But the one-year time-frame in which to institute proceedings applies only to those proceedings seeking to institute a fine, not for a declaratory judgment action as instituted herein. Moreover, the first sentence of

---

[19] See OGGA § 31-7-404 ("Within ten working days after receipt of notice under this article, the Attorney General shall publish notice of the proposed transaction in a newspaper of general circulation in the county where the main campus of the hospital is located and shall notify in writing the governing authority of such county.").

[20] See OCGA § 31-7-405 (a) ("Within 60 days after receipt of the notice under this article, the Attorney General shall conduct a public hearing regarding the proposed transaction in the county in which the main campus of the hospital is located.").

[21] See OCGA § 31-7-412 (a).

the section makes it clear that any transaction made in violation of requirements of the HAA is null and void. As explained above, this language is clear and unbounded by a temporal limitation because it is a perpetual legal status.[22] Therefore, we deny Emory's motion to dismiss the appeal.

3. Turning to Wellstar's argument on appeal, it contends that the trial court erred by finding that Emory's acquisition of Emory-Adventist does not constitute a transaction to which the HAA applies.

(a) Under the HAA, an "'[a]cquisition' means a purchase or lease by an acquiring entity of the assets of a hospital which is owned, controlled, or operated by a nonprofit corporation and which meets one or more of the following conditions: (A) Constitutes a purchase or lease of 50 percent or more of the assets of *a hospital having a permit under this chapter. . . .*"[23]

---

[22] Cf. *McKeen v. Fed. Deposit Ins. Corp.*, 274 Ga. 46, 48 (549 SE2d 104) (2001) (explaining that proceedings instituted against debtor or agreements made with debtors in violation of the automatic stay in bankruptcy proceedings are void — being a legal nullity of no effect); *Murphy v. Murphy*, 263 Ga. 280, 281 (430 SE2d 749) (1993) (explaining that statutes of limitation have no effect on judgments that are void rather than voidable: "'there can be no bar, estoppel[,] or limitation as to the time when a void judgment may be attacked'").

[23] (Emphasis supplied.) OCGA § 31-7-400 (2).

(i) The HAA defines a "'[h]ospital' [as] any institution classified and having a permit as a hospital from [DCH] pursuant to this chapter [Chapter 7] and [DCH's] rules and regulations."[24] Under related permitting statutes,

> a 'hospital' is an institution which is primarily engaged in providing to inpatients, by or under the supervision of physicians, diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons or rehabilitation services for the rehabilitation of injured, disabled, or sick persons. Such term includes public, private, psychiatric, rehabilitative, geriatric, osteopathic, and other specialty hospitals.[25]

Under OCGA § 31-7-1, a "'[p]ermit' means a permit issued by [DCH] upon compliance with the rules and regulations of [DCH]," and a hospital is a type of 'institution' regulated by the DCH.[26] Under OCGA § 31-7-3 (a), "… [p]ermits issued shall remain in force and effect until revoked or suspended; provisional permits issued shall remain in force and effect for such limited period of time as may be specified by the department."

---

[24] OCGA § 31-7-400 (8).

[25] (Punctuation omitted.) *Ga. Dept. of Community Health v. Northside Hosp. Inc.*, 295 Ga. 446, 448 (761 SE2d 74) (2014), quoting OCGA § 31-6-2 (21).

[26] OCGA § 31-7-400 (8).

(ii) *DCH regulations*. Under DCH's rules and regulations for hospitals, a "hospital" is defined circularly as "any building, facility, or place in which are provided two (2) or more beads [sic] and other facilities and services that are used for persons received for examination, diagnosis, treatment, surgery, or maternity care for periods continuing for twenty-four (24) hours or longer and which is classified by the department as a hospital."[27] A "permit" is defined as "the authorization granted by the D[CH] to a hospital governing body to operate the hospital's authorized services."[28] "A permit is not transferable from one governing body to another nor from one hospital location to another."[29]

"If the hospital anticipates that it will close or cease to operate, the governing body shall notify the Department at least thirty (30) days prior to the anticipated closure."[30]

> When the hospital ceases to operate, the permit shall be returned to the Department within ten (10) days of closure. The permit shall be considered revoked, unless placed on inactive status as described in

---

[27] See Ga. Comp. R. & Regs. r. 111-8-40-.02 (f).

[28] Ga. Comp. R. & Regs. r. 111-8-40-.02 (o).

[29] Ga. Comp. R. & Regs. r. 111-8-40-.03 (f).

[30] Ga. Comp. R. & Regs. r. 111-8-40-.03 (g).

13

these rules. . . . If the hospital is closing for a period of less than twelve (12) months, and plans to reopen under the same ownership, name, classification, and bed capacity, the hospital may request to have the permit placed on temporary inactive status.[31]

"A new permit . . . is required if the hospital . . . has a change in operational or trade name, has a change in ownership or classification, or has a change in the authorized bed capacity. The former permit shall be considered revoked upon the issue of a new permit and the former permit shall be returned to [DCH]."[32]

(c) Reviewing these statutes and regulations together, we see that the trial court's determination that Emory-Adventist was not a hospital because it lacked a permit is incorrect, standing alone. A hospital, once permitted, maintains the permit until it is revoked or suspended.[33] In this case, Emory-Adventist's permit was neither revoked nor suspended. Nevertheless, the plain language of the statutes and regulations do support the trial court's determination that to constitute a hospital

---

[31] Ga. Comp. R. & Regs. r. 111-8-40-.03 (g) (2) & (3).

[32] Ga. Comp. R. & Regs. r. 111-8-40-.03 (h).

[33] See OCGA § 31-7-3 (a).

14

under the HAA, the institution must be operating.[34] Thus, the combination of Emory-Adventist's surrender of its permit, and the closure of its facility supports the trial court's conclusion. While we agree with Wellstar that such closures could be utilized in order to evade the notification and public hearing required under the HAA,[35] the text of the statutes and regulations defining hospitals is clear, and the trial court did not err by denying the motion for summary judgment and dismissing the case.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur in judgment only.*

---

[34] See OCGA § 31-6-2 (21) ("institution which is primarily *engaged in providing* to inpatients") (emphasis supplied); Ga. Comp. R. & Regs. r. 111-8-40-.02 (f) ("any building, facility, or place in which *are provided* . . . facilities and services that *are used* for persons received for examination, diagnosis, treatment, surgery, or maternity care") (emphasis supplied).

[35] To the extent that Wellstar argues that *Turpen* requires a different result, we note that the case was physical precedent only and in any event, involved an institution that held a permit at the time the agreement was consummated. See *Turpen*, 245 Ga. App. at 195-196 (3); Court of Appeals Rule 33.2 (a) (2) ("An opinion is physical precedent only (citable as persuasive, but not binding, authority), however, with respect to any portion of the published opinion in which any of the panel judges concur in the judgment only, concur specially without a statement of agreement with all that is said in the majority opinion, or dissent.").